442 F.2d 100
 CORDAY'S DEPARTMENT STORE, INC., Plaintiff-Appellant,
v.
NEW YORK FIRE AND MARINE UNDERWRITERS, INC. and Certain
Underwriters at Lloyd's London, Signatories to
Cover Note No. FT402426CS, Defendants-Appellees.
CENTRAL NATIONAL BANK as Trustee Under Trust No. 5249,
Plaintiff-Appellant, LaSalle National Bank as
Trustee Under Trust No. 5251; Sol
Kaplan, Sam Kaplan and Morris
Kaplan, Plaintiffs,
v.
STATE FIRE AND CASUALTY COMPANY, Defendant, and New York
Fire and Marine Underwriters, Inc., Defendant-Appellee.
 Nos. 18367, 18368.
 United States Court of Appeals, Seventh Circuit.
 May 4, 1971, Rehearing Denied June 1, 1971.
 
 George C. Rabens, Chicago, Ill., for plaintiff-appellant.
 Norman A. Miller, John W. Morrison, Chicago, Ill., for defendants-appellees; Clausen, Hirsh, Miller & Gorman, Chicago, Ill., of counsel.
 Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and KERNER, Circuit Judge.
 CASTLE, Senior Circuit Judge.
 
 
 1
 These consolidated appeals are prosecuted from summary judgments entered for defendants-appellees, New York Fire and Marine Underwriters, Inc. and certain underwriters at Lloyd's, London, in two actions brought by plaintiffs-appellants, Corday's Department Store, Inc. and Central National Bank as trustee, to recover for fire loss and damage under insurance policies issued by the insurance company and a cover note issued by underwriters at Lloyd's to Corday's.[1] In No. 18367 the insured's claim is for an alleged business interruption loss, which resulted from damage to its property. In No. 18368 the claim is for damage to the insured's building. The respective business and property were located on West Roosevelt Road in Chicago, Illinois. In both cases the property damage which gave rise to the claims asserted occurred on April 5, 1967, in the wake of the civil unrest which followed the assassination of the Rev. Martin Luther King, Jr. Each of the insurance policies here involved was a 'Fire and Limited Extended Coverage' policy, and bore a 'Special Exclusion Endorsement' as follows:
 
 
 2
 'In consideration of the rate and premium charged, this policy specifically excludes all loss (including ensuing fire loss) or damage, caused directly or indirectly by Riot, Riot Attending a Strike, Civil Commotion, Civil Rights Demonstrations and all disturbances of a similar nature.'[2]
 
 
 3
 The insurers declined liability to the insureds on the ground that the endorsement specifically excludes from the policies' coverage loss by the perils which caused damage to the insureds' properties.[3] It is conceded by the appellant insureds that the losses and damage they sustained 'by fire' occurred 'in the course of riot and civil commotion' but they contend that the District Court erred in concluding that the special exclusionary endorsement is valid and enforceable.
 
 
 4
 On the record made by the pleadings, affidavits, and admissions before the court for consideration on the motions for summary judgment it is apparent that if the exclusionary endorsement is valid and enforceable the District Court was correct in entering the summary judgments in favor of the defendant-appellee insurance carriers.
 
 
 5
 The insureds point out that the Illinois Director of Insurance acting under his statutory powers[4] and in conformity with the mandate of Section 397 of the Illinois Insurance Code (Ill.Rev.Stat.1969, ch. 73, 1009) to:
 
 
 6
 '* * * promulgate such rules and regulations as may be necessary to effect uniformity in all basic policies of fire and lightning insurance issued in this State, to the end that there be concurrency of contract where two or more companies insure the same risk' promulgated Illinois Department of Insurance Rule 23.01 which designated, effective January 1, 1946, a standard form policy for fire and lightning insurance. The rule provides in part that: '(1) The printed form of policy attached hereto is hereby designated as the Standard Policy for fire and lightning insurance of the State of Illinois. No policy or contract of such insurance shall be made, issued or delivered by any insurer subject to the provisions of the Illinois Insurance Code or by any agent or representative thereof on any property in this State unless it shall conform to such Standard Policy and to the other provisions of this order. (8) The effective date of this order shall be January 1, 1946. On and after that date all policies written in this State shall conform to the foregoing requirements of the Standard Policy of the State of Illinois.'
 
 
 7
 The standard form policy so prescribed for use in Illinois insures against 'direct loss by fire' and contains the following provision:
 
 
 8
 'Added provisions. The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change.'
 
 
 9
 The insureds contend that the exclusionary endorsement constitutes an impermissible deviation from the standard form policy and is therefore invalid and unenforceable against them. In this connection they additionally urge that the endorsement contains a condition which 'unreasonably or deceptively affects the risks that are purported to be assumed by the policy' in contravention of the requirements of Section 143(2) of the Illinois Insurance Code (Ill.Rev.Stat.1969, ch. 73, 755(2)) which Section further provides that such a violation shall not 'in any way affect the legality of any policy that has been issued and found to be in conflict with this subsection, but such policies shall be subject to the provisions of section 442'. Section 442 of the Code (ch. 73, 1054) provides, in effect, that when any policy contains a provision or endorsement which conflicts with any provision of the Code, the rights, and the obligations of the company thereunder shall not be less favorable to the insured than is required by the applicable Code provisions. Thus, the insureds conclude that the statutes referred to, and Rule 23.01 adopted pursuant thereto, require that the exclusionary endorsement be excised from each of the policies involved with the result that such endorsement would not bar recovery on the respective loss claimed by each insured. No claim is made that if the endorsement is valid and binding the insureds' claims would not be barred.
 
 
 10
 The record discloses that the defendants-appellees were not authorized to do business in Illinois and that the policies here involved were issued under the provisions of the Illinois Insurance Code relating to what is known as 'surplus line insurance'. The defendant insurers contend that Section 397 of the Code, supra; Illinois Department of Insurance Rule 23.01, which prescribes the standard form of policy for fire and lightning insurance; and Section 143(2) of the Code, upon which the plaintiff insureds rely, are not applicable to policies issued in conformity with the surplus line provisions of the Code. These latter provisions are contained, primarily, in Section 445 of the Code (Ill.Rev.Stat.1969, ch. 73, 1057) which provides, in part, that any insurance agent or broker licensed in Illinois may be additionally licensed:
 
 
 11
 'to procure policies or contracts covering the kind or kinds of business specified in Classes 2 and 3 of Section 4 of Article I of this Code (Class 3 includes fire insurance) from companies which are not authorized to do business in this State and which have complied with Section 445.1, where such agent or broker is, after diligent effort unable to procure policies or contracts to cover the kind or kinds of business required from the companies duly authorized and licensed to transact business in this State.'
 
 
 12
 Section 445.1 of the Code (ch. 73, 1057.1) provides that no surplus line licensee shall procure such insurance from such unauthorized company unless the company meets certain qualifying requirements which are set forth.
 
 
 13
 The policies here involved were procured by a licensed surplus line broker in conformity with the requirements of Section 445, and the defendant insurers were in compliance with the qualifying requirements fixed in Section 445.1. And, surplus line insurance so procured is exempt from the proscription of Section 121 of the Code (ch. 73, 733) against the transaction of insurance business without an Illinois certificate of authority. In this respect Section 121 provides, in part:
 
 
 14
 'It shall be unlawful for any company to enter into a contract of insurance as an insurer or to transact insurance business in this State, without a certificate of authority from the Director; provided that this subsection shall not apply to contracts procured by agents under the authority of section 445, * * *.'
 
 
 15
 In Equitable Mutual Fire Insurance Company v. McCrae, 156 Ill.App. 467, the Illinois court had occasion to consider the unique status of an 'unauthorized company' when acting as a surplus line insurer under provisions similar to but preceding the Illinois Insurance Code. It was there pointed out (156 Ill.App. 467, 470-471):
 
 
 16
 'The plain language of the Act of 1905 supra inhibits our holding otherwise than that so far as companies whose policies the Act authorizes may be issued by the agent or broker licensed by the State, they are exempt from the provisions of the other statutory regulations affecting non-resident insurance companies. The title of the Act makes that clear. It relates to 'unauthorized companies', which by a fair interpretation of this unambiguous language means companies which but for the Act would be unable to issue their policies within the limits of this State. It was evidently made to meet a condition of embarrassment to some citizens who might otherwise be unable to procure from other companies a needed amount of insurance; so that such insurance has been colloquially referred to as 'surplus line insurance'; that is, insurance in excess of the line obtainable from companies authorized to do business in this State.'
 
 
 17
 In the more recent decision of theIllinois court in Cork v. Associated International Insurance Managers, 58 Ill.App.2d 331, 208 N.E.2d 4, the rationale of Equitable Mutual Fire Insurance Company v. McCrae, supra, was recognized as having continued vitality and application. It was observed (58 Ill.App.2d 331, 337, 208 N.E.2d 4, 7) that:
 
 
 18
 'Although the Equitable case was decided long before the enactment of the present 'Illinois Insurance Code' (1937), the reasoning and theory of the Equitable case apply here. Subsection (1), section 121, clearly states that 'this subsection shall not apply to contracts procured by agents under the authority of section 445 * * *'.'
 
 
 19
 The District Court, recognizing that the object and purpose of surplus line insurance provisions, as elucidated by the Illinois courts, is to make it possible to secure protection against a risk when authorized companies will not provide that protection, concluded that the regulatory scheme embodied in the Illinois Insurance Code is used to achieve that objective which embraces, as well, the implicit common sense judgment that it is better that a citizen of Illinois be able to insure a risk at less than standard coverage, than that he not be able to secure any protection at all.
 
 
 20
 We agree with the District Court's conclusion that the special exclusionary endorsement is not invalidated by the Illinois statutory provisions or the rules adopted pursuant thereto. That conclusion is not only consonant with the object and purpose of the surplus line insurance provisions of the Illinois Insurance Code, as that object and purpose has been stated by the Illinois courts, but also it is not inharmonious with those provisions of the Code relied upon by the insureds as requiring that surplus line insurers make no deviation from the coverage afforded by the standard form fire policy. In this connection it is observed that Section 397 of the Code (ch. 73, 1009), quoted supra, which commands the Director of Insurance to promulgate rules and regulations 'to effect uniformity in all basic policies of fire and lightning insurance issued in this State', and pursuant to which Illinois Insurance Department Rule 23.01 prescribing a standard form policy for fire and lightning insurance was promulgated, is a part of Article XXIII of the Illinois Insurance Code, the first section of which, Section 393 (ch. 73, 1005) specifically provides that:
 
 
 21
 'This article shall apply to all companies authorized to transact the kind or kinds of business enumerated in Class 3 of section 4 (Class 3 includes fire insurance).'
 
 
 22
 But, surplus line insurers are 'unauthorized companies' to which Article XXIII by its express terms can have no application. Thus, the command of Section 397 is not applicable to policies issued by a surplus line insurer, such as defendant appellees, acting pursuant to the authorization contained in Sections 445 and 445.1
 
 
 23
 Likewise, Section 143(2) of the Code (ch. 73, 755(2)) which proscribes and, in combination with Section 442, makes inoperative a policy endorsement which contains 'exceptions and conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy' is by reason of its terminology and context applicable only to authorized companies transacting Class 2 or 3 business and, as such, required to file policy and endorsement forms with the Illinois Department of Insurance for approval. The section has no application to a policy issued by a surplus line insurer-- the latter is not 'authorized' to transact business in Illinois.
 
 
 24
 We are not persuaded by the plaintiff insureds' additional contention that because defendant-appellee New York Fire and Marine Underwriters, Inc. is restricted in its home State, New York, in its issuance of fire policies covering New York risks, to the use of the standard fire policy form prescribed by New York, which is identical with the Illinois standard policy, it therefore may not deviate from the standard form when it issues a fire insurance policy procured from it pursuant to Section 445 as surplus line insurance on an Illinois risk. The insureds predicate this contention on the requirement in Section 445.1(c) that the surplus line insurer be authorized under the laws of the State in which it is organized 'to do the business it is transacting or proposes to transact' by the issuance of surplus line insurance on the Illinois risk, and the complementary Illinois Insurance Department Rule 28.01 that:
 
 
 25
 'Before a licensee shall place any risk with an unauthorized insurer, the Director of Insurance shall be advised that such unauthorized insurer. * * *
 
 
 26
 (a) is duly authorized under the laws of its domiciliary state or country to do the business proposed by the Surplus Line licensee to be placed with it * * *.'
 
 
 27
 We are of the view that both the Code provision and the rule obviously refer to the authority of the surplus line insurer to engage in the type or class of insurance business involved-- casualty, fire, marine, etc.-- rather than to the manner in which it contracts or to its use of any particular policy form.
 
 
 28
 We conclude that the District Court did not err in its determination that the special exclusionary endorsement here involved is valid and enforceable and is clearly a bar to the claim asserted in each of the insureds' complaints.
 
 
 29
 The judgment orders of the District Court entered herein are affirmed.
 
 
 30
 Affirmed.
 
 
 
 [1]
 The parties are agreed that a ruling on the claims under the New York Fire and Marine Underwriters, Inc. policy issued to Corday's is binding as to the claim under the Lloyd's cover note
 
 
 [2]
 The underlining appears in the text of the endorsement
 
 
 [3]
 Liability, as to both insureds, was also rejected by the insurers on the further ground that the loss in each instance was not a 'direct loss by fire'; and as to the Bank on the additional ground that the proof of loss filed did not meet the requirements of the policy. The issues raised by these defenses were not reached by the District Court
 
 
 [4]
 Section 401 of the Illinois Insurance Code (Ill.Rev.Stat.1969, ch. 73, 1013) provides, in this respect, that:
 'The Director is charged with the rights, powers and duties appertaining to the enforcement and execution of all the insurance laws of this State. He shall have power
 (a) to make reasonable rules and regulations as may be necessary for making effective such laws; * * *'