22 Mass. App. Ct. 407                              407

Church of Christ in Lexington *v.* St. Paul Surplus Lines Ins. Co.

CHURCH OF CHRIST IN LEXINGTON *vs.* ST. PAUL SURPLUS
LINES INSURANCE COMPANY.

Middlesex.    May 6, 1986. — June 20, 1986.

Present: GRANT, KASS, & FINE, JJ.

*Insurance,* Surplus line insurance, Construction of policy, Foreign insurance company. *Interest.*

In a fire insurance policy issued to a Massachusetts religious institution under the authority of G. L. c. 175, § 168, by a Minnesota "surplus lines" insurance company not admitted to transact general insurance business in the Commonwealth, language providing that, if the property insured "is located in a state or province that requires a Standard Fire Insurance Policy at variance with this [p]olicy," the terms of the required standard policy would prevail was held as incorporating the provisions respecting interest contained in the Massachusetts standard fire policy, notwithstanding an interest clause in the policy issued which was more favorable to the Minnesota insurer. [409-412]


CIVIL ACTION commenced in the Superior Court Department on November 16, 1984.

The case was heard by *Herbert Abrams,* J., on a motion for summary judgment.

*Brian R. Merrick* for the defendant.

*Michael S. Greco (Richard S. Boskey* with him) for the plaintiff.

FINE, J. The Church of Christ in Lexington (church) brought this action in the Superior Court to recover interest on an $800,000 fire loss covered by a policy of fire insurance issued to the church by St. Paul Surplus Lines Insurance Company (St. Paul), a Minnesota corporation. The question we must decide is whether the interest payable provision of the standard fire insurance policy set forth in G. L. c. 175, § 99, takes precedence over a nonconforming provision in the St. Paul policy.

St. Paul is a "surplus lines" insurance company, one which is neither an insurer organized under Massachusetts law nor a foreign corporation admitted to transact insurance business in the Commonwealth. Under the authority of G. L. c. 175, § 168, as amended through St. 1961, c. 413, § 1, a person may receive a license as a special insurance broker to negotiate, in very limited circumstances, contracts to provide insurance on property located in Massachusetts. Insurance may be written by such specially licensed brokers with surplus lines companies only when "the full amount of insurance required to protect said property or interests is not procurable . . . from among [Massachusetts or admitted foreign insurance] companies." See generally *Corday's Dept. Store, Inc.* v. *New York Fire & Marine Underwriters, Inc.,* 442 F.2d 100 (7th Cir. 1971); *Railroad Roofing & Bldg. Supply Co.* v. *Financial Fire & Cas. Co.,* 85 N.J. 384 (1981); Long & Gregg, Property & Liability Insurance Handbook 1012-1027 (1965).

A judge allowed the church's motion for summary judgment in the full amount claimed by the church, $152,551. The judge apparently concluded that St. Paul, the "surplus lines" insurer, was bound by the interest provisions of the Massachusetts standard fire insurance policy, notwithstanding a clause in the St. Paul policy issued to the church which was more favorable to the insurer. We agree with the judge's determination that the church was entitled to summary judgment in the full amount.

We summarize the facts. The church obtained fire insurance in the amount of $800,000 from St. Paul on a building the church owned in Boston. The policy was countersigned on behalf of St. Paul in St. Paul, Minnesota. It was a standard form contract based upon the "New York Standard Fire Insurance Policy." However, it included the following provision:

> "STANDARD FIRE INSURANCE POLICY: If property covered hereunder is located in a state or province that requires a Standard Fire Insurance Policy at variance with this [p]olicy, then this [p]olicy shall cover such property in accordance with the provisions of such required Standard Fire Insurance Policy."

On July 21, 1982, the church building sustained fire damage. The parties could not agree on the amount of the loss. The St. Paul policy provided for an appraisal procedure to be used in the event of such a disagreement. The Massachusetts standard fire insurance policy provides for a reference procedure which differs in some respects from the appraisal procedure but is designed to accomplish the same purpose, i.e., to settle the amount of the loss. The parties agreed to submit the dispute to three referees. On August 6, 1984, the referees determined that the church had sustained a loss in the full amount of the policy, $800,000. Having ruled at the outset that the proceedings were governed by G. L. c. 175, § 99, the referees included interest in their award in accordance with the provision in the Massachusetts standard fire insurance policy. General Laws c. 175, § 99, cl. Twelfth, par. 18, as amended through St. 1973, c. 1064, provides in relevant part:

> "The company shall be liable for the payment of interest to the insured at a rate of one percent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company, said interest to continue so long as the claim remains unpaid."

Under the St. Paul policy the loss is not payable until sixty days have elapsed since the submission of proof of loss, and "ascertainment of the loss is made either by agreement between the insured and [the] company expressed in writing or by the filing with [the] company of an award." St. Paul interprets this provision as requiring interest to run only from the date of the award. St. Paul paid the $800,000 principal amount of the referees' award but has refused to pay any portion of the $152,551 interest awarded by the referees.

There are difficult issues, which the parties address, relating to the authority of the Legislature to regulate surplus lines insurance companies and, if that authority exists, whether it was intended that G. L. c. 175, § 99, apply to surplus lines

insurance contracts.[1] We need not resolve those issues, however, because we think a reasonable person contracting to buy insurance would read the language of the St. Paul policy as incorporating the provisions of the Massachusetts standard fire policy. To the extent that there is any ambiguity, the policy must be construed against the insurer. See *Charles Dowd Box Co.* v. *Fireman's Fund Ins. Co.,* 351 Mass. 113, 119-120 (1966); *Morin* v. *Massachusetts Blue Cross, Inc.,* 365 Mass. 379, 390 (1974); *Bates* v. *John Hancock Mut. Life Ins. Co.,* 6 Mass. App. Ct. 823, 824 (1978); Keeton, Insurance Law § 6.3 (1971). Looking to the language of the St. Paul policy, Massachusetts is "a state . . . that requires a Standard Fire

---

[1] General Laws c. 175, § 3, as amended through St. 1970, c. 642, § 2, provides that "[n]o company shall make a contract of insurance . . . except as authorized by [c. 175] . . . or except as otherwise expressly authorized by law . . . ." General Laws c. 175, § 99, provides that, except in two situations not applicable to the present case, "[n]o company shall issue policies or contracts which, under the authority of clause First of section forty-seven, insure against loss or damage by fire or by fire and lightning to property or interests in the commonwealth, other than those of the standard forms . . . ." Clause First of § 47 merely lists a number of perils, including fire. Thus, other than the two inapplicable exceptions referred to in § 99, there is no express exception to the requirement in § 99 for any category of insurance company. Nor is there anything in G. L. c. 175, § 168, which authorizes specially licensed brokers to negotiate surplus line policies on property in Massachusetts, which exempts such carriers from the requirements of G. L. c. 175, § 99. St. Paul, on the other hand, relies for its interpretation that surplus lines carriers are not subject to the requirements of G. L. c. 175, § 99, upon the introductory language of G. L. c. 175, § 47, which precedes and modifies clause First. That language is as follows: "Companies may be incorporated under and subject to the provisions of this chapter for the following purposes." G. L. c. 175, § 47, as amended through St. 1979, c. 304. Nineteen clauses follow, each describing a different category of insurance. Domestic companies, then, would be subject to the requirements of § 99. Foreign companies admitted to transact business in the Commonwealth under G. L. c. 175, §§ 150-157, must operate subject to all the laws of the Commonwealth concerning the insurance industry. They would also be operating, therefore, "under the authority of clause First" of § 47, and would be subject to the requirements of G. L. c. 175, § 99. Companies operating "under the authority of clause First" of § 47, St. Paul argues, are limited to domestic insurance companies and foreign companies admitted to transact business in the Commonwealth. According to St. Paul, surplus carriers may, therefore, consistent with G. L. c. 175, write nonconforming policies.

Insurance Policy at variance with [the St. Paul policy]." Therefore the St. Paul policy "shall cover such property in accordance with the provisions of such required Standard Fire Insurance Policy."

It may be that the Legislature could not lawfully regulate St. Paul, a nonadmitted foreign company, to the extent of imposing the required standard form on a contract entered into outside of Massachusetts. See *Johnson* v. *Mutual Life Ins. Co.*, 180 Mass. 407 (1902); *Stone* v. *Old Colony St. Ry.*, 212 Mass. 459 (1912); Rep. A.G., Pub. Doc. No. 12, at 98 (1937). See also *State Board of Ins.* v. *Todd Shipyards Corp.*, 370 U.S. 451 (1962); *Tisdale* v. *Nationwide Mut. Ins. Co.*, 148 Ind. 670, 673 (1971). St. Paul, however, voluntarily included the reference to the required standard form in its contract. It did not provide, as it could have, that the standard form was to be applicable only if a nonconforming contract could not lawfully be executed. A reasonable purchaser of insurance would be likely to know that Massachusetts had a required standard fire insurance policy and would assume, based upon a reading of the St. Paul contract language, that the standard policy provisions would govern. "Language in an insurance policy must be given its ordinary meaning . . . and construed in the sense that the insured will reasonably understand to be the scope of his coverage." *Slater* v. *United States Fid. & Guar. Co.*, 379 Mass. 801, 803 (1980), and cases cited. See also 2 Anderson Couch's Cyclopedia of Insurance Law § 15:16 (2d. ed. 1984).

The differences between the St. Paul contract and the Massachusetts standard fire insurance policy are slight. The major variance relates to interest. Interest could be a matter of considerable concern to a person or an institution buying a policy of fire insurance on a major piece of property. The Massachusetts requirement adds an element of fairness to the contract from the point of view of the insured, as it provides that interest be paid for any period during which the company has the use of money which should have been at the disposal of the insured. The provision is also advantageous to the insured in that it discourages delay in settling claims by providing an incentive to the company to settle early. In view of the language

used by St. Paul in the policy, the insured is entitled to the benefit of the more generous of the two provisions relating to interest.

Because of the result we reach, we need not decide the other issues argued on appeal.

*Judgment affirmed.*