JOSEPH A. BARRANCO, SR., & others[1] vs. MILFORD
HOUSING AUTHORITY.

Worcester. September 5, 1990. - November 7, 1990.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Contract.* Construction of contract, Lease of real estate, Parties, Third
party beneficiary. *Housing Authority. Actionable Tort.*

A certain apartment lease, under which a municipal housing authority
subsidized the tenant's rental payments to his landlord, contained no
provision requiring the authority to take any action for the tenant's
benefit upon being notified of a defect in the premises. [506-507]

At the trial of a negligence claim against a municipal housing authority
that had subsidized an apartment tenant's rental payments to his land-
lord, there was no evidence that would have warranted the jury in find-
ing facts giving rise to a duty on the part of the authority to avoid
injury to the tenant, and attendant loss of consortium to members of his
family, resulting from a defect in the premises. [507-509]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 12, 1982.

The case was tried before *Mel L. Greenberg*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Philip J. MacCarthy* (*Patricia J. DiGiovanni* with him)
for the defendant.

*Andrej Thomas Starkis* for the plaintiffs.

*Toni Lee Pomeroy*, for South Middlesex Legal Services,
Inc., amicus curiae, submitted a brief.

[1]Marina E. Barranco, wife of Joseph A. Barranco, Sr., and Joseph A.
Barranco, Jr., Mark E. Barranco, Tara L. Barranco, and Joseph L.
Barranco, by their parents and next friends Joseph A. Barranco, Sr., and
Marina E. Barranco.

*Martin J. Rooney,* for Boston Housing Authority & others, amici curiae, submitted a brief.

O'CONNOR, J. In this action, Joseph A. Barranco, Sr. (Barranco), seeks to recover damages for bodily injuries he sustained as a result of falling down stairs in an apartment he occupied as a tenant. The apartment was owned by Dennis Cashman, previously a defendant. The defendant Milford Housing Authority (Authority) subsidized the rental payments. The other plaintiffs seek recovery for loss of consortium. Barranco's claims are based on theories of breach of contract and negligence (tort). Although the language of the complaint is not entirely clear, the loss of consortium claims are necessarily also grounded in tort for negligence.

At the conclusion of all the evidence, the Authority moved for a directed verdict on all the claims against it. The judge allowed the motion with regard to Barranco's negligence claim, apparently on the ground that Barranco had failed to comply with the presentment requirements of G. L. c. 258, § 4, added by St. 1978, c. 512, § 15. The judge ordered the entry of judgment for the Authority on that claim. The judge otherwise denied the motion and, after the jury returned verdicts for the plaintiffs, he denied the Authority's motion for judgment notwithstanding the verdicts. Judgments were entered for the plaintiffs. Barranco appealed from the judgment for the Authority on his tort claim, asserting that the judge erred in directing a verdict thereon. The Authority also appealed, claiming that the judge should have directed verdicts in its favor on Barranco's bodily injury claim based on breach of contract and on the loss of consortium claims. We transferred the case from the Appeals Court to this court on our own initiative. We conclude that the evidence was insufficient as a matter of law to warrant verdicts for the plaintiffs on any of their claims. Therefore, we affirm the judgment for the Authority on Barranco's tort claim, and we reverse the judgments for Barranco on his contract claim and for the other plaintiffs. We order judgment for the Authority on

Barranco's contract claim and the claims for loss of consortium.[2]

We recite the relevant facts the jury would have been warranted in finding. Due to the absence of a bannister, Barranco fell while descending a staircase in his apartment on February 18, 1980, and was injured. Before the accident, Dennis Cashman, who owned the apartment, and the Authority had been notified that a bannister was needed at that location and that its absence constituted a violation of the State Sanitary Code. At the time of the accident a lease was in effect between Barranco, as tenant, Cashman, as owner, and the Authority. Barranco and the Authority each paid part of the rent.

Section 2 of the lease is entitled, "The Owner Agrees." Section 2 contains numerous numbered paragraphs and subparagraphs dealing with the owner's obligation to provide and maintain a safe and clean apartment, including stairways. In paragraph 2.5, the owner agrees as follows: "2.5 To repair all defects upon notification which create an immediate and serious danger to life, health or safety or provide the Tenant with suitable temporary accommodations which meet the minimum requirements of the State Sanitary Code . . . as quickly as possible. If repairs are not made, or suitable temporary accommodations offered, within 72 hours after Owner learns of the defect, the Authority may do one of the following:

"2.5.1 The Authority may have the repairs done by workmen of its own choosing and may charge the cost of repairs to the Owner . . ., or

"2.5.2 the Authority may find suitable temporary accommodations for tenant, in which case the Authority's share of the total rent shall abate completely during the entire period in which the defect exists and no repair or offer of suitable temporary accommodations is made, or

---

[2]We acknowledge the brief of South Middlesex Legal Services, Inc., as amicus curiae, and also the amici curiae brief of the Boston, Somerville, Lynn, and Woburn Housing Authorities.

"2.5.3 the Authority may terminate this lease 10 calendar days after Owner receives notice of such defects if the required repairs are not substantially underway or completed, the determination of which shall be made solely by the Authority. The Authority shall have the responsibility of relocating Tenant (See Sec. 3.11 for reference).

"2.5.4 Regardless of which option is chosen by the Authority, if repairs are not made or suitable temporary accommodations offered within the initial 72-hour period, the Tenant's share of the total rent shall abate completely during the entire period in which the defect exists and neither the Owner nor the Authority make repairs or offer suitable temporary accommodations."

In paragraph 2.6 the owner agrees: "[t]o make all other necessary repairs within 21 days after being properly notified of the defect. If repairs are not made during this time period, the Authority may have the repairs done by workmen of its own choosing. If these repairs are not done by either the Owner or Authority within this time period, the Tenant may petition the Grievance Panel, for a partial rent abatement in proportion to the amount of harm or inconvenience the Tenant suffers until the repair is made." Paragraphs 2.7 through 2.13 set forth various other responsibilities undertaken by the owner, having to do with such matters as painting (2.7), maintenance of insurance (2.8 and 2.9), provision of emergency maintenance service (2.10), steps to be taken if the Owner should transfer his interest in the building (2.11), and the method of delivery of notices to the tenant (2.12). Paragraph 2.13 states, "[the owner agrees][t]hat if more than one person signs this lease as Owner, all promises and covenants made herein shall be considered as joint and several."

Sections 3 and 4 of the lease are respectively entitled, "The Authority Agrees," and "The Tenant Agrees." These sections contain numerous paragraphs, none of which we repeat because, in their argument to us, the plaintiffs do not rely on any provision in sections 3 or 4. The plaintiffs rely only on section 2. We make the observation, however, that there is no provision in section 3, dealing with the Author-

ity's agreements, that even arguably suggests an undertaking by the Authority to provide a bannister, to otherwise maintain or repair Barranco's apartment, or to take any other action it failed to take in this case.

. Barranco argues with respect to his contract claim that the jury would have been warranted in finding that the Authority was on notice that there was no bannister, and that the absence of a bannister created an immediate and serious danger to life, health, or safety. Also, Barranco argues, the jury would have been warranted in finding that section 2 of the lease, especially paragraph 2.5 and its subparagraphs, required the Authority in such circumstances either to repair the defect, or move the tenant to other accommodations, or terminate the lease. Since the evidence shows that the Authority failed to adopt any of those alternatives, Barranco asserts, the jury were warranted in finding that the Authority breached its contract and that the plaintiff's injury resulted.

We reject Barranco's contention that the jury properly could have interpreted section 2 of the lease to require the Authority to take any action in response to its having been notified of the absence of a bannister. "The interpretation of an unambiguous written document is a matter of law for the court," *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 157 (1983), not the jury, and the lease in this case is not ambiguous. Section 2, consistently with its heading, details the obligations undertaken, not by the Authority, but by Dennis Cashman, the owner of the apartment. Nothing in section 2 purports to be a recitation of the Authority's or the tenant's obligations. Their undertakings are set forth in other sections — sections on which Barranco does not rely. Thus, in section 2, paragraph 2.5, Cashman agreed that he would correct immediate and serious safety hazards or provide the tenant with other accommodations, but, if he were to fail to do either, the Authority could, if it were to choose to do so, effectuate repairs at Cashman's expense or provide alternative accommodations. The Authority's provision of alternative accommodations would have the effect of abating Cashman's right to receive rent from the Authority. To the

extent that section 2 mentions the Authority, it does not fo-
cus on the Authority's obligations but rather on the Author-
ity's rights and the owner's corresponding obligations. Thus,
for example, if the Authority were to choose to repair the
premises, as subparagraph 2.5.1 provides it may do, the
owner must pay for the repairs in one form or another. It is
true that we will construe the word "may" in a written docu-
ment to mean not "may" but "must" when such a construc-
tion is clearly demanded by the context, but ordinarily we
recognize the word "may" as a permissive term which "does
not impose a mandate but simply authorizes an act." *School
Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass.
70, 81 (1982). Nothing in the present lease requires that the
word "may" appearing repeatedly in section 2 be construed
as anything other than a merely permissive term. Section 2
mandates responses by the owner to actions merely permitted
to the Authority. We conclude, therefore, that the jury were
not warranted in concluding that Barranco's accident was
caused by a failure of the Authority to live up to its contract
obligations.

We turn to the question raised both by Barranco's appeal
from the judgment for the Authority on his tort claim and
the Authority's appeal from the judgments for the plaintiffs
on the loss of consortium claims. That question is whether
the evidence was sufficient to warrant verdicts for Barranco
and the other plaintiffs on the negligence claims. We con-
clude that the evidence was insufficient. There was no evi-
dence that would have warranted the jury in finding facts
giving rise to a duty on the part of the Authority to avoid
injury to Barranco and the other plaintiffs' attendant loss of
consortium. The Authority was not the owner of the premises
nor in control of them. The Authority took no action that
created a risk to the plaintiffs, and it was not bound to pro-
tect them against the owner's failures.

The plaintiffs rely on *Ayala* v. *Boston Hous. Auth.*, 404
Mass. 689 (1989), for the proposition that the plaintiffs are
entitled to recovery as third-party beneficiaries of a contract
between the Authority and the Department of Community

Affairs (Department), an agency of the Commonwealth for the Rental Assistance Program. St. 1966, c. 707. The plaintiffs' reliance on *Ayala* is misplaced. In that case, we held that the minor children of a tenant occupying an apartment under the auspices of the Section 8 Housing Assistance Payments Program, 42 U.S.C. § 1437f (1982), were third-party beneficiaries of the contract between the Boston Housing Authority and the United States Department of Housing and Urban Development and the contract between the authority and the owners of so-called § 8 apartments. Those contracts required the Boston Housing Authority to inspect for lead paint hazards and to notify the tenants of the results of the inspection. *Id.* at 698. We reasoned that those contracts were intended to benefit the plaintiff tenants, and that therefore they could enforce the contracts. *Id.* at 700-703.

Even if there were no procedural obstacle to the plaintiffs' pursuit of their tort claims by reliance on a contractual third-party beneficiary theory, a matter we need not decide, *Ayala* does not help the plaintiffs because the Authority in this case did not contract with the Department or with the owner of the apartment or with anyone else to provide stairway handrails or to otherwise assure compliance with State safety regulations by the owners of the subsidized housing. The regulations governing the rental assistance program, incorporated in the contract between the Authority and the Department, provide that "[d]welling units chosen for the program must be certified by the local Board of Health [not the Authority] to conform to the State Sanitary Code, Article II, 'Minimum Standards of Fitness for Human Habitation' [105 Code Mass. Regs. § 410.00 (1986)]." 760 Code Mass. Regs. § 8.01 (5) (a) (1986). Also, the State Sanitary Code requires that "[t]he owner [not the Authority] shall provide a safe handrail for every stairway that is used or intended for use by the occupants." 105 Code Mass. Regs. § 410.503 (a) (1986). Unlike the situation in *Ayala*, here the Authority has not been shown to have violated a contract provision intended to benefit the plaintiffs.

The plaintiffs have put forth no other theory on which the jury would have been warranted in returning verdicts in their favor on the tort claims, and we are aware of none. Therefore, we affirm the judgment for the defendants on Barranco's tort claim, and we reverse the judgments for Barranco on his contract claim and for the other plaintiffs on their claims alleging loss of consortium. We order judgment for the Authority on Barranco's contract claim and on the loss of consortium claims.

*So ordered.*