830      66 Mass. App. Ct. 830 (2006)

American Commercial Finance Corporation *v.* Seneca Insurance Company.

## American Commercial Finance Corporation *vs.* Seneca Insurance Company.

No. 05-P-952.

Middlesex. March 20, 2006. - July 24, 2006.

Present: Laurence, Berry, & Doerfer, JJ.

*Insurance,* Fire, Coverage, Construction of policy. *Contract,* Insurance.

The most obvious and commonsense reading of the language in a fire insurance policy implied a duty on the insurer to pay expenses for the insured's measures to protect its property, which had been damaged by fire, from further damage before the damage was remedied. [831-835]

Civil action commenced in the Superior Court Department on September 12, 2003.

The case was heard by *Peter M. Lauriat,* J., on motions for summary judgment, and entry of final judgment was ordered by him.

*John D. Boyle* for the defendant.

*Alice Olsen Mann* for the plaintiff.

Doerfer, J. The plaintiff, American Commercial Finance Corporation (insured), was insured under a fire insurance policy issued by the defendant, Seneca Insurance Company (insurer). The insured's property was damaged by a fire. In the aftermath, the insured took steps over some period of time to protect the property from further damage before the damage was remedied, and substantial expenses were incurred. At issue is whether those expenses were covered under the policy. The insurer appeals from an adverse ruling on cross motions for summary judgment requiring it to pay those expenses. We affirm.

*Facts.* The material facts are not in dispute. At some point prior to November 25, 2000, the pipes burst on the insured property, a large commercial building in Hudson. As a result, the

American Commercial Finance Corporation *v.* Seneca Insurance Company.

sprinklers became inoperable. A fire broke out on November 25, 2000, which caused extensive damage to the premises. The insured hired a private security service for several months thereafter to not only protect the property from vandalism[1] but also to protect it from further fire damage, since the sprinkler system was inoperable. In doing so it incurred an expense of $79,350.50. The insurer declined to pay these expenses.

The policy states as follows regarding actions required of an insured after a loss:

> "Take all reasonable steps to protect the Covered Property from further damage, and *keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.* This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination." (Emphasis supplied).

Under "Limits of Insurance," the policy states:

> "The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations. . . . The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance."

The amount of $79,350.50, when added to the amount paid by the insurer to the insured for the damage to the insured building, did not exceed the limits of insurance.

We will refer below to other clauses in the policy that the parties rely upon in their arguments on appeal.

*Discussion.* We resolve questions whether an insurance policy creates a duty on the insurer to pay the insured as a matter of contract law, with the meaning of a written contract to be determined as matter of law by the court. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982); *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430

---

[1] The policy covered not only fire loss but also loss due to vandalism.

Mass. 794, 797 (2000); *Commerce Ins. Co.* v. *Theodore*, 65 Mass. App. Ct. 471, 471 n.2 (2006).

We first look to the language used in the policy as the surest guide to the meaning of the policy. See *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997) ("interpretation of an insurance contract is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense").[2] The language of the policy quoted above quite clearly requires the insured to take steps to protect the property from further damage after a loss. That paragraph does not, however, contain a direct promise on the part of the insurer to pay the insured for the expenses incurred in protecting the property.

Nevertheless, the most obvious and commonsense reading of the language used in the clause implies a duty to pay such expenses. The phrase,

> "keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim,"

clearly states that such expenses will be considered in the "settlement of the claim." The most natural interpretation of this language is that such expenses will be paid, perhaps subject to a consideration of their reasonableness in character and amount.[3]

The immediately following sentence is, "This will not

[2]Unambiguous words "must be interpreted in their usual and ordinary sense," *County of Barnstable* v. *American Financial Corp.*, 51 Mass. App. Ct. 213, 215 (2001), while any ambiguity in the policy must be construed against the insurer. See *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. at 281; *Church of Christ in Lexington* v. *St. Paul Surplus Lines Ins. Co.*, 22 Mass. App. Ct. 407, 410 (1986). An ambiguity exists when the language contained in an insurance contract is susceptible of more than one meaning. *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 466 (1995). However, an ambiguity does not exist solely because there is a conflicting interpretation between the parties. See *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475 (1987).

[3]Identical language was interpreted in the case of *Klein's Moving & Storage, Inc.* v. *Westport Ins. Corp.*, 196 Misc. 2d 735, 738-739 (N.Y. Sup. 2003), as not requiring the insurer to pay the cost of moving goods out of a warehouse for the purpose of repainting the premises that had been damaged by fire and not for the purpose of preventing further loss to the property. Here the expense

increase the Limit of Insurance." "This" obviously refers to "expenses" as the only monetary reference that could be included in the concept of increasing the limits of insurance. If such amounts were not to be paid there would be no need to state, in effect, that such amounts could only be paid if in doing so the limits of insurance would not be exceeded.[4]

The insurer points out that the language relied upon by the insured is preceded by the heading, "Duties [of the insured] In The Event Of Loss Or Damage," and is located in the portion of the policy entitled "Loss Conditions," which states,

> "The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions."

In other words, the insurer argues that the language is located in an area of the document that does not deal with coverage but rather deals with conditions of coverage.

The structure of a document may be helpful in ascertaining the meaning of the language where there might otherwise be ambiguity. See *County of Barnstable* v. *American Financial Corp.*, 51 Mass. App. Ct. 213, 218 (2001) (considering the policy's content and structure as factors in determining the insured's reasonable expectations of coverage, assuming that the doctrine of reasonable expectations applies). See also *Barranco* v. *Milford Hous. Authy.*, 408 Mass. 502, 506 (1990) (identifying relevant contract provision as consistent with its heading); *Berkshire Mut. Ins. Co.* v. *Burbank*, 422 Mass. 659, 661 (1996) (same).

---

involved was clearly incurred to protect property from further damage. See *Royal Indem. Co.* v *Grunberg*, 155 A.D.2d 187, 189-190 (N.Y. 1990); *Benjamin Shapiro Realty Co.* v. *Agricultural Ins. Co.*, 287 A.D.2d 389, 389-390 (N.Y. 2001), in which the insured parties were entitled to reimbursement of costs incurred in preventing much greater loss where the insureds had a contractual duty to take all reasonable steps to protect the covered property from further damage by a covered cause of loss.

[4]We note that another kind of expense incurred in connection with a loss, but not related to the damage to the property itself, is also provided for, but in a manner that is not limited by the limits of insurance. If a fee must be paid to a fire department as a service charge for responding to the fire, such fees up to $1,000 will be paid under the policy and that fee is in excess of the limits of coverage.

However, where, as here, the terms at issue are unambiguous, we construe the words in their usual and ordinary sense. *Hakim* v. *Massachusetts Insurers' Insolvency Fund,* 424 Mass. at 280. See *Rubenstein* v. *Royal Ins. Co. of America,* 44 Mass. App. Ct. 842, 851 (1998) ("In the last analysis, the language of the particular policy controls"). Here there is almost no persuasive construction that can be placed on the language in question other than an undertaking to pay for the cost of protecting the property. The insurer's argument that the record of expenses is merely for consideration in a settlement does not explain how the concept of "consideration" makes any sense if the reasonable amount of such expense is not to be compensated. The further argument that the purpose of requiring the insured to keep a record of its expenses is to enable it to prove to the insurer that it took steps to protect the property seems far fetched. The insured can prove what steps it took by evidence far more direct than showing how much such efforts cost. Our interpretation follows the well-known rule of " 'constru[ing] the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.' *Gross* v. *Prudential Ins. Co. of America,* 48 Mass. App. Ct. 115, 119 (1999)." *Massachusetts Prop. Ins. Underwriting Assn.* v. *Wynn,* 60 Mass. App. Ct. 824, 827-828 (2004).

It is true, as argued by the insurer, that the insured is obliged to act reasonably to protect the property from further damage. See G. L. c. 175, § 99, Twelfth, as amended by St. 1981, c. 718.[5] But such a duty inures to the benefit of the insurer, which continues under the policy to be liable for damage to the property from insured risks during the policy period.

The insurer warns against finding "implied coverage" for all consequential expenses related to a fire loss beyond contractor and repair charges, such as accountant's fees, adjustor charges,

---

[5]General Laws c. 175, § 99, prescribes the standard form for Massachusetts fire insurance policies. See *In-Towne Restaurant Corp.* v. *Aetna Cas. & Sur. Co.,* 9 Mass. App. Ct. 534, 541 (1980). It provides, in relevant part, that the insurer "shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by . . . (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss . . . ." G. L. c. 175, § 99, Twelfth, as inserted by St. 1943, c. 462, and as amended by St. 1951, c. 478, § 1.

and attorney's fees. We find no such obligation in this policy. We rely on the express language of the policy itself and take only the smallest step of inference to give meaning to an otherwise meaningless phrase in the contract.

*Judgment affirmed.*