RALPH W. HAKIM & another[1] *vs.* MASSACHUSETTS INSURERS'
INSOLVENCY FUND.

Norfolk. November 4, 1996. - February 14, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & MARSHALL, JJ.

*Insurance,* Homeowner's insurance, Owned property exclusion, Construction of policy. *Environment,* Environmental cleanup costs. *Contract,* Insurance. *Practice, Civil,* Summary judgment.

Discussion of cases considering whether an "owned property" exclusion in an insurance policy bars coverage for the costs of an environmental cleanup of a policyholder's property in circumstances where contaminants have migrated to adjacent property and the cleanup is designed to prevent or abate such further migration. [279-281]

Where the language of an "owned property" exclusion in an insurance policy was susceptible of two interpretations, i.e., that it provided coverage for the costs of an environmental cleanup of a policyholder's property and that it did not provide coverage, the ambiguity is to be construed in favor of the policyholder and against the insurer; further, in the circumstances, a reasonable policyholder would have expected coverage of some or all of the disputed costs. [281-282]

Where disputed questions of fact remained, in an action seeking indemnity for certain environmental cleanup costs, as to whether the cleanup of an insured's property was necessary to prevent further contamination of adjacent waterways so as to escape an "owned property" exclusion in the applicable policy of insurance, the matter was remanded for further proceedings. [282-284]

CIVIL ACTION commenced in the Superior Court Department on February 11, 1993.

The case was heard by *Elizabeth Butler,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Martin C. Pentz (Peter A. Johnson & Raymond Sayeg, Jr.,* with him) for the plaintiffs.

*Peter E. Heppner (Stephen M.A. Woodworth* with him) for the defendant.

---

[1]Mary F. Hakim.

*Peter G. Hermes & Kevin J. O'Connor, & Laura A Foggan, Daniel E. Troy & N. Christopher Hardee* of the District of Columbia, for the Insurance Environmental Litigation Association, amicus curiae, submitted a brief.

MARSHALL, J. The question for decision is whether the "owned property" exclusion in a homeowners' insurance policy bars coverage for the costs incurred by the policyholders for the cleanup of an oil spill on their property. The cleanup was undertaken after the policyholders received a notice of responsibility from the Massachusetts Department of Environmental Protection (department). Ralph W. Hakim and Mary F. Hakim (Hakims) commenced this action against Abington Mutual Fire Insurance Company (Abington)[2] when Abington, the issuer of their homeowners' insurance policy, refused to indemnify the Hakims for those costs. Abington filed a counterclaim seeking a declaration that it had no coverage obligation to the Hakims. On cross motions for summary judgment, a judge of the Superior Court allowed Abington's motion, denied the Hakims' motion, and entered judgment for Abington. The Hakims appealed and we granted their application for direct appellate review. We vacate the order of the Superior Court granting summary judgment to Abington.

We summarize the material facts which are not in dispute. The Hakims purchased their homeowners' insurance policy from Abington for the period October 7, 1990, to October 7, 1993. On October 8, 1992, a neighbor of the Hakims reported to the local fire department the appearance of a petroleum sheen on the surface of a stream about ninety feet from the Hakims' residence. The source of the contamination was a ruptured underground fuel line leading from an aboveground oil storage tank in the Hakims' basement to the furnace. About one hundred gallons of home heating oil had leaked into the ground and had contaminated the Hakims' property. The fire department disconnected the leaking pipe and installed a temporary pipe aboveground.

---

[2]On October 31, 1995, we issued an order of liquidation declaring Abington insolvent, G. L. c. 175, § 180C, and appointed the Commissioner of Insurance (commissioner) as Abington's receiver in liquidation. On December 8, 1995, we allowed a joint motion of the commissioner, the Hakims, and the Massachusetts Insurers' Insolvency Fund (Fund) to substitute the Fund as party defendant to the Hakims' breach of contract claim, and as a plaintiff-in-counterclaim with respect to Abington's request for declaratory relief.

The department was notified, and the next day a representative from the department inspected the site and issued a notice of responsibility under G. L. c. 21E, § 5, to the Hakims. The department informed the Hakims that it considered them liable for the "assessment, containment and removal actions necessitated by this incident," and that, if they did not assume responsibility for the cleanup, the department would do so and take appropriate action to "recover all costs, charges and damages" from the Hakims, including interest and treble damages. It advised the Hakims that, if they did assume responsibility for the cleanup, they were to "[d]ispose of the contaminated soil generated at the site" in conformance with the department's current policies.

A licensed environmental engineering firm, ENPRO Services, Inc. (ENPRO), responded to an emergency call from the department and performed certain emergency response actions. In response to the notice of responsibility, the Hakims also retained ENPRO to perform assessment and related remedial work.

ENPRO determined that the leaking oil had migrated through the drainage system of the Hakims' house to an outfall pipe, and from there into a stream which flowed through a corner of the Hakims' property. Beyond the property, the oil passed from the stream, through a pond, and eventually into the Charles River. ENPRO took emergency measures to confine and remove the oil contamination of the adjacent waterways through the use of oil absorbent booms and pads which were placed where the outfall pipe from the Hakims' property connected to the stream, as well as at other locations downstream. An oil spill containment boom was also placed in a downstream pond. These emergency actions were completed by October 12, 1992.

In the following months ENPRO undertook additional assessment and remedial work. It appears that at least through April, 1993, the oil absorbent booms and pads placed on the waterways were kept in place, and that ENPRO checked and changed them from time to time.[3] The remedial work also included the excavation and removal of contaminated soil from beneath the basement slab of the Hakims' house. This remedial action was recommended by ENPRO "to remove

---

[3]The record is not clear as to precisely what work ENPRO performed off-site in the months following the emergency cleanup in October, 1992.

and eliminate the secondary source (contaminated soils)" and "in order to achieve compliance with governing environmental guidelines and policies." This work was completed by June, 1993.

The Hakims filed a timely notice of claim with Abington, seeking reimbursement for all the costs they had incurred for the assessment and cleanup. Abington agreed to and apparently did pay for the costs incurred for all the assessment work and for the containment and cleaning of the waterways located near the Hakims' property.[4] It refused, however, to pay for the costs of the excavation and removal of the contaminated soil from the Hakims' property. When coverage was refused, the Hakims initiated this action against Abington.[5]

We begin our consideration with a brief outline of the policy. There are two parts to the policy. Section I provides for "Property Coverages" and contains five categories of coverage: the insureds' "Dwelling" (Coverage A), "Other Structures" (Coverage B), "Personal Property" (Coverage C), "Loss of Use" (Coverage D) and certain other enumerated "Additional Coverages." This section also contains itemizations of "Perils Insured Against," "Exclusions" and "Conditions." The exclusions include a pollution exclusion clause which states that the policy does not cover losses caused by the "release, discharge or dispersal of contaminants or pollutants." The Hakims make no claims for indemnity under Section I of the policy.

Section II, termed "Liability Coverages," contains two categories of coverage; "Personal Liability" (Coverage E), and "Medical Payments to Others" (Coverage F). Section II also contains its own itemizations of "Exclusions," "Additional Coverages" and "Conditions." The Hakims make their claim pursuant to "Coverage E - Personal Liability," which reads in pertinent part: "If a claim is made or a suit is brought

---

[4]The record is not clear as to precisely which costs were paid for by Abington and which by the Hakims.

[5]The Hakims' complaint included a claim for breach of contract and a claim under the Consumer Protection Act, G. L. c. 93A, § 2, for violations of G. L. c. 176D, § 3 (9). The Hakims do not press the G. L. c. 93A claim against the Fund, but "reserve all rights" they may have to pursue that claim against the estate of Abington in liquidation. We do not consider the nature or extent of that claim.

against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will . . . pay up to our limit of liability for the damages for which the insured is legally liable."[6] That provision, in turn, is subject to certain exclusions. Of relevance to this case is the owned property exclusion which provides that Coverage Personal Liability does not apply to "property damage to property owned by the insured."

The Fund contends that the owned property exclusion limits the scope of liability coverage based on the location of the property harmed and bars coverage for any damage to the policyholders' own property. According to the Fund, it was contractually obliged to pay only for damage to third-party property — in this case the waterways adjacent to the Hakims' property — and had no obligation to pay for any damage to the Hakims' property. The Hakims argue that the location of the cleanup is irrelevant; they seek indemnification for all the cleanup costs that, they say, were incurred "because of" the property damage to the surrounding waterways.

We previously have not addressed the question whether an owned property exclusion bars coverage for the costs of an environmental cleanup of a policyholder's property.[7] Numerous other courts have done so, interpreting insurance policies similar to the one at issue here. In cases where environmental contaminants have migrated from a policyholder's property to an adjacent property, courts generally have agreed that the owned property exclusion does not relieve the insurer of all liability for response costs incurred by the cleanup of the policyholder's own property; coverage is not barred if the cleanup is designed to remediate, to prevent, or to abate further migration of contaminants to the off-site property. See,

[6]For Section II liability coverage to be triggered there must be "property damage" caused by an "occurrence." The policy defines "occurrence" as "an accident, including exposure to conditions, which results, during the policy period, in . . . bodily injury . . . or . . . property damage," and "property damage" as "physical injury to, destruction of, or loss of use of tangible property." The parties do not dispute that the oil spill constituted an "occurrence" causing "property damage" within the policy definitions. See Hazen Paper Co. v. United States Fid. & Guar. Co., 407 Mass. 689, 700 (1990).

[7]In Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844 (1993), we did not reach the issue because we concluded that the record did not establish that the insured actually owned the property at issue.

e.g., *E.I. du Pont de Nemours & Co.* v. *Allstate Ins. Co.*, 686 A.2d 152, 157 (Del. 1996) ("coverage [is] not . . . provided for measures taken on an insured's property unless it is in response to damage to third party property"); *Gerrish Corp.* v. *Universal Underwriters Ins. Co.*, 947 F.2d 1023, 1030-1031 (2d Cir. 1991), cert. denied, 504 U.S. 973 (1992) (applying Vermont law); *Bankers Trust Co.* v. *Hartford Acc. & Indem. Co.*, 518 F. Supp. 371, 373 (S.D.N.Y.) (applying New York law) ("work done on the property to prevent further oil seepage was as a matter of law within the coverage"), vacated on other grounds, 621 F. Supp. 685 (S.D.N.Y. 1981); *Olds-Olympic, Inc.* v. *Commercial Union Ins. Co.*, 129 Wash. 2d 464, 478-480 (1996). See also *State* v. *Signo Trading Int'l, Inc.*, 130 N.J. 51, 64 (1992) ("this case does not fall within the narrow exception allowing recovery for the cost of measures intended to prevent imminent or immediate future damage when a present injury has already been demonstrated"). Applying our familiar rules of interpretation of insurance contracts, we join those courts and hold that where, as here, there was contamination of adjacent property, the costs of remedial efforts to prevent further contamination of that property are not excluded from coverage by the owned property clause.[8]

The interpretation of an insurance contract is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982), quoting *MacArthur* v. *Massachusetts Hosp. Serv., Inc.*, 343 Mass. 670, 672 (1962); *Barnstable County*

---

[8]Even in the absence of contamination of third-party property, some courts have held that the owned property exclusion does not bar recovery for cleanup costs of the insured's property if these were incurred to prevent the imminent migration of contamination to third-party property. See, e.g., *Intel Corp.* v. *Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1565-1566 (9th Cir. 1991) (applying California law); *Savoy Medical Supply Co.* v. *F & H Mfg. Corp.*, 776 F. Supp. 703, 708-709 (E.D.N.Y. 1991) (applying New York law); *Allstate Ins. Co.* v. *Quinn Constr. Co.*, 713 F. Supp. 35, 40-41 (D. Mass. 1989), vacated on other grounds, 748 F. Supp. 927 (D. Mass. 1990); Jones Truck Lines *vs.* Transport Ins. Co., U.S. Dist. Ct. C.A. No. 88-5723 (E.D. Pa. May 10, 1989). In this case it is undisputed that there was contamination of the waterways adjacent to the Hakims' property. We therefore need not and do not consider whether the owned property exclusion bars coverage if there is an imminent threat of, but no actual contamination of, the property of another.

*Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 605 (1978). We read the policy as written and "are not free to revise it or change the order of the words." *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 147 (1984).

The Fund argues that the plain meaning of the disputed provision excludes coverage of all of the costs of cleanup on the Hakims' property, regardless of the reason for the cleanup. In the Fund's view, it is irrelevant whether the excavation and removal of soil from the Hakims' property was to eliminate a source of the contamination or to protect the adjacent waterways from further contamination. Liability coverage, says the Fund, extends only to third-party property damage and the costs to remediate the contamination of third-party property.[9]

The Hakims argue that the plain language of the owned property exclusion does not bar coverage for the excavation and removal of the contaminated soil from their property. Focusing on the words of "Coverage E - Personal Liability," they argue that, if the cleanup activity is conducted "because of" or to "address" the contamination of the adjacent waterways, the owned property exclusion does not apply.

If free from ambiguity, an exclusionary clause, like all other provisions of an insurance contract, must be given its usual and ordinary meaning. *Royal-Globe Ins. Co.* v. *Schultz*, 385 Mass. 1013 (1982). We are not persuaded that the policy language here unequivocally supports the interpretation of either party; both interpretations are at least plausible.[10] Where, as here, there is more than one rational interpretation of policy language, "the insured is entitled to the benefit of the one that is more favorable to it." *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass. 844, 849 (1993), quot-

---

[9]The Fund argues that it is free to exercise its own business judgment and may decide for itself that the most cost-effective approach to a cleanup of third-party property contamination is to pay for the cost of a cleanup of a policyholder's property.

[10]There are no Massachusetts appellate decisions interpreting the owned property exclusion in circumstances similar to these. We note that judges in the Superior Court have reached conflicting decisions interpreting substantially similar policy exclusions. Compare Rubenstein *vs.* Liberty Mut. Ins. Co., Suffolk Superior Court No. 90-1687-B (Aug. 23, 1995), and Stupp *vs.* Taylor & Murphy, Inc., Middlesex Superior Court No. 90-4093 (Dec. 23, 1991), with the decision reached by the trial judge in this case.

ing *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). This rule of construction applies with particular force to exclusionary provisions. As we said in *Vappi & Co.* v. *Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431 (1965), "[e]xclusions from coverage are to be strictly construed," and any ambiguity in the exclusion "must be construed against the insurer."

It is also appropriate that we consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Trustees of Tufts Univ., supra* at 849, quoting *Hazen Paper Co., supra* at 700. We conclude that a reasonable policyholder would expect coverage of some and possibly all of the disputed cleanup costs in the circumstances of this case. It is undisputed that the Hakims incurred their costs when oil contamination was discovered in the waterways adjacent to their property and when the department issued its notice of responsibility. When the repair of the ruptured fuel line stopped further leaks of the heating oil into the ground, the Hakims could reasonably have expected that the costs incurred to prevent continuing contamination of the waterways from the migrating oil would not be excluded from coverage. The Hakims were told by ENPRO that it was necessary to remove the "secondary source" of the contamination. They also, presumably, were aware that the oil absorbent booms and pads had to be maintained on the waterways for several months after the ruptured fuel line had been repaired. They could have concluded that contamination of the waterways would persist unless the contaminated soil was removed from their basement.

This does not necessarily mean that the Fund is liable for all of the cleanup costs incurred by the Hakims. The policy covers cleanup costs incurred to remediate or prevent further migration of the contaminants to the off-site waterways. Costs incurred for the sole purpose of remediating the Hakims' property are barred by the owned property exclusion of the policy.[11]

Judgment was entered in the court below on cross motions

---

[11]Some courts have held that the owned property exclusion does not bar coverage regardless whether the contamination is confined to the insured's property or has migrated or might migrate elsewhere. See *Anderson Dev. Co.* v. *Travelers Indem. Co.*, 49 F.3d 1128, 1134 (6th Cir. 1995) (applying Michigan law); *Joslyn Mfg. Co.* v. *Liberty Mut. Ins. Co.*, 23 F.3d 1212,

for summary judgment. Summary judgment is appropriate, of course, if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Kourouva-cilis* v. *General Motors Corp.*, 410 Mass. 706 (1991). On the record before us, we cannot determine whether any or all of the cleanup of the Hakims' property (the excavation and removal of the contaminated soil from their basement) was necessary to prevent further contamination of the adjacent waterways. Because of her interpretation of the policy, the trial judge was not required to and did not decide whether there was a disputed question of fact as to this issue.

On appeal, the Fund argues that the Hakims offered no evidence of contamination to any groundwater or off-site soil subsequent to the emergency cleanup of the waters. We do not agree. Oil absorbent pads and booms were required to remediate the contamination to the waterways for some months after the initial emergency responses. The Hakims also rely on the ENPRO report to argue that there was a threat of further contamination of the adjacent waterways unless the contaminated soil was removed from beneath their basement.[12] Based on our review of the submissions to the trial judge, we conclude that there is a dispute as to material facts that cannot be resolved on summary judgment.[13]

We vacate the order of the Superior Court granting sum-

1214 n.1 (7th Cir. 1994) (applying Illinois law); *Patz* v. *St. Paul Fire & Marine Ins. Co.*, 15 F.3d 699, 705 (7th Cir. 1994) (applying Wisconsin law). In *Patz, supra*, the court, interpreting a policy similar to the one at issue here, concluded that the location of the cleanup is "irrelevant;" it reasoned that the insureds, "are not seeking to recover for damage to their property; they are seeking to recover the cost of the liability that the Department of Natural Resources imposed on them for maintaining a nuisance." We are not persuaded by this interpretation and conclude that our holding is more consistent with reading the insurance policy as a whole "without according undue emphasis to any particular part over another." *Mission Ins. Co.* v. *United States Fire Ins. Co.*, 401 Mass. 492, 497 (1988), quoting *Woogmaster* v. *Liverpool & London & Globe Ins. Co.*, 312 Mass. 479, 481 (1942).

[12]Compare *Figgie Int'l, Inc.* v. *Bailey*, 25 F.3d 1267, 1272 (5th Cir. 1994) (summary judgment appropriate where insured "failed to submit *any* evidence" that hazardous material located on insured's property was capable of leaking into groundwater).

[13]The Fund argues that our interpretation of the owned property clause would constitute a "judicially create[d] exception" to the owned property exclusion, and as such the Hakims would bear the burden of proof that the

mary judgment to Abington and remand the case for further proceedings in accordance with this opinion.

*So ordered.*

---

exception is applicable to their circumstances. Our holding today does not create an "exception" to the exclusion, and there is no necessity to deviate from the ordinary burden analysis applied in insurance cases. On remand, the Hakims will bear the burden of proving that their claim falls within the affirmative grant of coverage of the policy. *Markline Co.* v. *Travelers Ins. Co.*, 384 Mass. 139, 140 (1981). The Fund will bear the burden of proving the applicability of the exclusion to particular costs. See *Hanover Ins. Co.* v. *Talhouni*, 413 Mass. 781, 785 (1992); *Ratner* v. *Canadian Universal Ins. Co.*, 359 Mass. 375, 381 (1971).