van Gestel, J.
This matter comes before the Court on cross motions for partial summary judgment. The plaintiffs, Capital Funding Services, Inc. (“Capital Funding”) and Charter Oak Financial Group LLC (“Charter Oak”), have moved for partial summary judgment against defendants Novel Iron Works, Inc. (“Novel”), Les Structures Breton, Inc. (“Breton”) and Canatal Industries, Inc. (“Canatal”) in connection with the First, Fourth and Ninth Counts of the Substitute *245 Amended Complaint. The defendant Breton has cross-moved for summary judgment in its favor.
BACKGROUND
The facts that follow are undisputed, and there are no other facts material to the issues upon which this memorandum and order are grounded.
Capital Funding and Charter Oak are in business as factors (the “Factors”), and as such they purchase accounts receivable from operating businesses. Beginning in the latter part of 1998 and continuing through the early months of 2000, the Factors purchased, or purported to purchase, accounts receivable from the defendants Red Oak Corporation (“Red Oak”) and Red Oak Construction Corp. (“Red Oak Construction”).
Red Oak and Red Oak Construction are two closely tied entities engaged in the business of erecting structural steel. The Red Oak companies were typically hired as subcontractors, under written agreements with steel fabricating or erection contractors to complete work on various construction projects. The defendants Novel, Breton and Canatal are steel fabricators or erectors, each of which had, at various times, subcontracted with one or more of the Red Oak companies.
Three factoring agreements are in issue here. Each agreement is entitled a “Purchase and Sale Agreement,” whereby accounts receivable “owing to Seller and accepted by Factor as set forth on Schedule A annexed hereto” are purchased or assigned to the Factors by the sellers. The first such agreement was dated September 14, 1998, and ran between Red Oak Construction as “Seller” and Capital Funding as “Factor.” The second agreement was dated November 24, 1998, and ran between Red Oak as “Seller” and Capital Funding as “Factor.” The third agreement was dated March 21, 1999, and ran between Red Oak as “Seller” and Charter Oak as “Factor.”
Each time one of the Factors provided funding to Red Oak or Red Oak Construction, a new Schedule A to the particular agreement in issue was said to be created.
From approximately March 1999 through February 2000 the Factors claim to have purchased from Red Oak and Red Oak Construction numerous accounts receivable relating to subcontracts with Novel, aggregating $1,243,520.
From approximately November 1999 through February 2000 the Factors claim to have purchased from Red Oak numerous accounts receivable relating to subcontracts with Canatal, aggregating $1,265,071.
From approximately December 1999 through March 2000 the Factors claim to have purchased from Red Oak numerous accounts receivable relating to subcontracts with Breton, aggregating $725,000.
In each instance, the Factors sent to Novel, Breton and Canatal Letters — essentially identical in form and substance — purporting to notify them of the factoring agreements with the Red Oak companies involving accounts receivable due to the Red Oak compames.[1] Because of their significance to this memorandum and order, the wording of those notice letters — except for the name of the addressee, the date and the signatory — is set forth here in its entirety.
[date]
[Addressee]
To Whom It Concerns:
In order to accommodate the changes and growth in our business, we have been fortunate to obtain the services of Capital Funding Services, Inc. as a source of capital financing. The availability of this service will enable us to serve our customers in a more efficient manner.
Please accept a photocopy or facsimile of this letter as “reasonable proof that the assignment has been duly recorded under the appropriate State Statues [sic] and Uniform Commercial Codes.”
This notice will remain in effect until you are notified by Capital Funding Services, Inc. in writing, to the contrary. For prompt processing and credit, please remit all payments to:
Capital Funding Services, Inc.
[Address, telephone and facsimile numbers]
In some instances, when payments were sent directly to a Red Oak company and not to the Factor, the Factor would send a letter addressed to Novel, Breton or Canatal, “Att: Accounts Payable,” that read:
It has come to our attention that your payments to Red Oak Corporation have been mailed directly to Red Oak Corporation rather than this office.
As per the enclosed Assignment Letter dated ... to ensure prompt processing and credit, all payments should be mailed to:
Capital Funding Services, Inc.
[Address, telephone and facsimile numbers]
The “Assignment Letter” referenced in and enclosed with the foregoing notice would be a copy of the original notice letter described above.
With regard to Breton, at least, Breton requested and received from the Factors a copy of the appropriate Purchase and Sale Agreement, but without any copy of a Schedule A.
The record is unclear with regard to each of Novel, Breton and Canatal as to payments made by them to the Factors on accounts receivable due to the Red Oak companies after receiving the foregoing notice letters or subsequent reminders. For these purposes it is enough to say that some payments may have been made as directed, some were made directly to Red Oak companies, and then all payments stopped.
In the background, it appears, but there was no sufficient evidence to make a ruling, that the Red Oak *246 companies failed and became in breach of their various contracts with Novel, Breton and Canatal, thus explaining, to some extent, the cessation in payments.
There also are material facts in dispute as to whether the Schedule A’s issued accurately stated or reflected correct reconciliations between invoices to Novel, Breton and Canatal from Red Oak and the amounts provided by the Factors to Red Oak and claimed in the Schedule A’s. Again, those issues are fact intensive and cannot be resolved on these motions.
There is, however, a legal issue that can be resolved on these motions. It relates to the Uniform Commercial Code notice requirements that will determine who should prevail, at least on liability, as between the Factors and Novel, Breton and Canatal, the account debtors, regarding the payments the latter made to the Red Oak companies and not to the Factors.
DISCUSSION
Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
The principal issue that must be examined is whether the Factors, on the record before this Court, provided legally sufficient notices to bind the account debtors, Novel, Breton and Canatal, to make all payments due to the Red Oak companies, after receipt of such notices, to the Factors. On this issue the facts are not in dispute. The notices are what they are, and they were received by the account debtors. The legal question is: were the notices sufficient under the law?
G.L.c. 106, Sec. 9-318 relates, among other things, to defenses available to an account debtor against an assignee of an account receivable. Subsection (3)[2] of Sec. 318 reads:
The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.
(Emphasis added.)
G.L.c. 106, Sec. 9-318 is solely a statutory creation. It does not purport to codify the common law. As such, it is enforceable only by strict compliance with the statutory specifications. See, e.g., East Coast Steel Erectors, Inc. v. Ciolfi, 417 Mass. 602, 605 (1994); Blount Bros Corp. v. Lafayette Place Assocs., 399 Mass. 632, 639 (1987).
The plain language of this subsection (3) requires “notification that the amount due or to become due has been assigned” and that “payment is to be made to the assignee.” In the form of letter quoted above on p. 3, it is only the single sentence in the second paragraph that comes even close to referencing an assignment. It reads cryptically: “Please accept a photocopy or facsimile of this letter as ‘reasonable proof that the assignment has been duly recorded under the appropriate State Statues (sic) and Uniform Commercial Codes.’ ” Nothing else in the letter speaks about or refers to any “assignment.” There is no antecedent or subsequent explanation as to what “the assignment” alluded to may be. What, then, does this sentence tell a recipient? To this Court, nowhere near enough to “reasonably identify the rights assigned.”
Nor does the sentence recite any “amount due or to become due” from Novel, Breton or Canatal to any of the Red Oak entities. The sentence does not even say what has been assigned. Is it, as the Factors would have one believe, clear that accounts receivable are what have been assigned; or might it equally well be rights under a contract, or rights in a promissory note, or interests in real property, a lease, a license, construction equipment, or any one of the many things of value that can be assigned from one entity to another? And if it can be read as only accounts receivable, what accounts, in what amount?
Nowhere does the letter state, or even hint, that the Factors are, in fact, factors.
In their arguments, the Factors assert that they have a security interest in all of Red Oak’s accounts receivable and, therefore, they do not have to spell out in their notices any particular accounts or amounts. The weakness in that argument, however, comes again from a reading of the notice letter. Nowhere does the letter state that Capital Funding has a security interest in anything, let alone all of Red Oak’s accounts receivable.
Nor, to this Court, does the final sentence of the letter provide any clarity or direction. It reads: “For prompt processing and credit, please remit all payments to [Capital Funding].” For prompt processing of what? All payments for what? All payments to whom? All payments on any particular account receivable?
What the recipient knows from this notice letter, at the very most, is that Red Oak considers itself fortunate to obtain some services from Capital Funding as a source of “capital financing,” and, in some unexplained way, this is going to enable Red Oak to serve its customers more efficiently. Red Oak is in the steel erection business. What is the reader to assume that Capital Funding is going to do to assist Red Oak in erecting steel for its customers? How will Capital *247 Funding make Red Oak more efficient? And how, if any of that can be discerned, does it translate into some form of statutorily mandated notice that a particular account receivable from Novel, Breton or Canatal has been assigned to Capital Funding?
The statement that the recipient may accept a copy of the letter as proof that some assignment has been recorded is put in quotation marks, thereby suggesting that it is quoted from something. But there is no hint of from what or where the quote — if it truly is one — is taken.
The second sentence of G.L.c. 106, Sec. 318(3) provides that “[a] notification which does not reasonably identify the rights assigned is ineffective.” This Court finds the letter notices here to be ineffective.
The notices having been found ineffective, the Court is not directed by the statute to go any further. If it did, however, at least as to Novel and Canatal, it would find little more. Only Breton is shown to have availed itself of the opportunity to seek additional Information from the Factors. What Breton received, however, was a copy of one of the Purchase and Sale Agreements and an authorization for an officer of Red Oak to sign it. With these two documents in hand, it can be said that at least Breton then knew the Factors were factors and that they may have bought certain of Red Oak’s accounts receivable. But even here, by the very language of the Purchase and Sale Agreement, it was only “those specific accounts receivable . . . owing to [Red Oak] and accepted by Factor as set forth on Schedule A annexed hereto, and any additional assignment forms provided by Factor” that were, or were to be, purchased. Recall, however, that no Schedule A was attached to the Purchase and Sale Agreement sent to Breton. In its absence, no one can tell what accounts were accepted and purchased by the Factors and, therefore, the notice sent to Breton cannot be said to have been cured by the provision of the incomplete document.
ORDER
For the foregoing reasons, the motion for partial summary judgment against the defendants under the First, Fourth and Ninth Counts of the Substitute Amended Complaint is DENIED, and the cross motion of the defendant Les Structures Breton, Inc. is ALLOWED.
Further, pursuant to Mass.R.Civ.P. Rule 56(c), summary judgment is, for the same reasons, appropriate for the defendants Novel Iron Works, Inc. and Canatal Industries, Inc. against the plaintiffs, and is also ALLOWED.

 Novel’s notice was dated March 17, 1999, and was signed by Todd Brouillette, Red Oak’s Executive Vice President. Canatal’s notice was dated December 16, 1999, and was signed by Steven Allard, Red Oak’s President. Breton’s notice was dated January 24, 2000, and was also signed by Brouillette.

 The decision here relates solely to the notice issues under that portion of c. 106, Sec. 9-318, subsection (3). It suggests nothing about the disputed factual issues relating to Sec. 9-318, subsections (1) or (2).