Gershengorn, J.
This case arises out of an action by Airport Motors, a car dealership and its owners (collectively referred to as the “plaintiffs”), against Universal Underwriters Insurance Company (the “defendant”) for the defendant’s alleged failure to pay on the plaintiffs’ claim for losses due to the theft of a substantial number of used cars by an employee (“Mr. Colwick”).
The defendant argues that the plaintiffs policy' contains an Exclusionary Clause which exempts the defendant from their obligation to pay on the claim due to the fact that Mr. Colwick had been dishonest in his dealings with the plaintiffs in the past.
The defendant now moves for summary judgment arguing that the policy in general, and the Exclusionary Clause in particular, demonstrate that as a matter of law the defendant does not have to pay on the plaintiffs’ claim.
For the following reasons, the defendant’s motion is DENIED.
FACTS
The summary judgment record reflects the following facts, taken in the light most favorable to the plaintiffs as the non-moving party. From 1995 until 1998, the plaintiffs operated a car dealership in Barn-stable. During this time, the defendant issued the plaintiffs “Automotive Floater Policies” which included Employee Dishonest Coverage covering losses “resulting directly from one or more fraudulent or dishonest acts committed by an Employee, acting alone or in collusion with others.” The phrase “fraudulent and dishonest acts” is defined in only one place in the policy, the Insuring Clause, and provides:
Dishonest and fraudulent acts as used in this Insuring Agreement shall mean only fraudulent *155 and dishonest acts committed by such Employee with the manifest intent (a) to cause the Insured to sustain such loss; and (b) to obtain financial benefit for the Employee, or for such benefit, other than salaries, commissions or fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment.
The covered acts in the Insuring Clause are limited by the language of the Exclusionary Clause which provides that:
. . . any Employee from and after the time that the 'Insured or any partner or officer thereof not in collusion with such Employees shall have knowledge or information that such Employee has committed or is about to commit any fraudulent or dishonest act in the service of the insured or otherwise, whether such act to be committed before or after the date of employment by the Insured.
In 1995, the plaintiffs discovered that Mr. Colwick had sold used cars, but did not report the sales to the office at the time that they were sold. Mr. Colwick under-reported the number of cars sold in a particular transaction so as not to show a loss on that deal. He would then report the cars after he had made a gain in sales which would boost his job performance. When the plaintiffs discovered this practice, they confronted Mr. Colwick in the presence of their attorney, placed him on “forced vacation” and conducted an investigation. The investigation confirmed that Mr. Colwick was indeed under-reporting the vehicles sold, but that he was not doing it for monetary gain. The investigation further showed that the plaintiffs did not lose any money beyond that normally lost in the used car sales business and the plaintiffs did not believe Mr. Colwick to be dishonest because he told them about the practice when he was confronted and he did make an effort to report all the vehicles he sold.
In March 1999, the plaintiffs submitted a Proof of Loss statement to the defendant listing and documenting 24 vehicles lost due to a theft by Mr. Colwick. The total dollar value of the cars was $278,610. In April 1999, the plaintiffs supplemented the Proof of Loss statement with evidence of another scheme by Mr. Colwick that resulted in $15,200 in losses to the plaintiffs.
Several letters of correspondence went back and forth between the parties culminating in the defendant’s refusal to pay on the plaintiffs’ policy because the plaintiffs had been aware of Colwick’s fraudulent and dishonest behavior in 1995. The plaintiffs filed the instant action for payment on the policy and the defendant now moves for summary judgment.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate when no material facts are in dispute and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ. 56(c); Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). The moving party bears the burden of affirmatively demonstrating both the absence of triable issues and its entitlement to judgment as a matter of law. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who would not bear the burden of proof at trial may demonstrate the absence of triable issues by either submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party would have no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To overcome a summary judgment motion, the non-moving party must articulate specific facts establishing the existence of general issues of material facts. Pederson, supra, at 17. Bare assertions or conclusions regarding an individual’s understandings and assumptions are insufficient to withstand a well pleaded motion for summary judgment. Polaroid Corp. v. Rollins Envti. Servs., 416 Mass. 684, 696 (1993).
II. The Policy and the Exclusionary Clause
In general, a dispute concerning the interpretation of an insurance policy is a question of lawfor the court. See Somerset Savings Bank v. Chicago Title Insurance Company, 420 Mass. 422, 427 (1995). Unambiguous terms are construed and enforced according to their plain meaning. Id. Doubts created by ambiguous terms in a policy are to be resolved against the insurer. See Jefferson Ins. Co. of New York v. National Union Fire Ins. Co., 42 Mass.App.Ct. 94, 97-97 (1997). Similarly, exclusionary clauses must be strictly construed against the insurer. Id. Where there is more than one rational way to interpret the language of a policy, “the insured is entitled to the benefit of the one that is more favorable to it.” See Hakim v. Massachusetts Ins. Insolvency Fund, 424 Mass. 275, 281-82 (1997), quoting Trustees of Tufts Univ. v. Commercial Union Ins. Co. ,415 Mass. 844, 849 (1993). “This rule of construction applies with particular force to exclusionary provisions.” Id. Further, any ambiguity in the exclusion “must be construed against the insurer.” See Hakim, supra at 281-82. Finally, it is also appropriate that the court consider “what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.” See Trustees, supra at 849.
The first obstacle to the defendant’s motion for summary judgment is the fact that the disputed phrase “fraudulent and dishonest” appears twice in the policy, in two different places; the Insuring Clause and the Exclusionary Clause. The phrase is defined in the Insuring Clause but not in the Exclusionary Clause. The defendant argues that this Court should ignore the definition in the Insuring Clause and adopt a “plain and ordinary meaning” interpretation of the phrase for the Exclusionary Clause. However, this *156 Court cannot adopt such a reading as a matter of law. Moreover, where the definition of the phrase appeared in the Insuring Clause, the plaintiffs might reasonably have read that definition to pertain to the Exclusionary Clause. Indeed, upon asking this Court not to adopt the definition in the Insuring Clause but instead to conduct a plain meaning analysis for the Exclusionary Clause, the defendant has, in effect, conceded an ambiguity concerning the disputed phrase. Therefore, as a matter of law, the ambiguity must be resolved in favor of the insured and summary judgment is not appropriate on this theory. See Hakim, supra at 281-82.
The defendant next argues that there is no dispute that the conduct of Mr. Colwick in 1995 was fraudulent and dishonest and is therefore exempted from coverage under the Exclusionary Clause. First, as stated above, what constitutes “fraudulent and dishonest” is a question resolved in favor of the plaintiffs at the summary judgment stage. Second, there is a material dispute regarding the nature of Mr. Colwick’s conduct. The plaintiffs claim that Mr. Colwick’s misreporting of cars sold in 1995 did not resort in losses beyond that incurred during the regular course of business and that the plaintiffs, and perhaps Colwick himself, did not view his actions as “fraudulent and dishonest” as defined under the policy. This argument may or may not be a winning one at trial but the defendant’s burden at summary judgment is to demonstrate that it not only prevails as a matter of law but also that there are no disputed material facts. Mr. Colwick’s behavior in 1995 and 1999 are material to (he action at bar. Taking the facts in the light most favorable to the plaintiff, as this Court must at the summary judgment stage, there are facts where a reasonable juror could conclude that Mr. Colwick’s behavior in 1995 did not amount to “fraudulent and dishonest” under the policy. These facts include that: (1) Mr. Colwick did not benefit monetarily from the under-reporting nor did he intend to do so; (2) he did not cheat the plaintiffs out of profits nor did he intend to do so; (3) he eventually reported the cars to the plaintiffs; and (4) he explained the behavior when confronted.
Because there are material facts in dispute and because the defendant does not prevail as a matter of law, the defendant’s motion for summary judgment is DENIED.
ORDER
For the foregoing reasons it is hereby ORDERED that defendant’s motion for summary judgment be DENIED.