Neel, Stephen E., J.
From 1853until 1952, plaintiff Fitchburg Gas & Electric Light Company (FG&E) owned and operated a manufactured gas plant (MGP) on a tract of land located in Fitchburg known as the Sawyer Passway Site (site). Like other local utilities, FG&E manufactured gas, from coal and coke, to light street lights, heat homes, power cooking stoves, and provide indoor lighting. The manufacturing process generated hazardous materials at the site. In this action FG&E seeks a declaration that several primary liability insurance policies issued by defendants One-Beacon American Insurance Company (OneBeacon) and The Travelers Indemnity Company (Travelers), respectively, obligate them to defend and indemnify FG&E for cleanup costs at the site.
The matter is before the Court on FG&E's motion for partial summary judgment based on (1) trigger of coverage, (2) notice, and (3) the owned property exclusion; and on defendants’ motions for summary judgment based on (1) allocation and post-policy period damage, (2) the owned property exclusion, (3) the voluntary payments condition, (4) the expected or intended property damage exclusion, (5) the pollution exclusion, and (6) the statute of limitations and laches.
The parties’ motions are before the Court as follows. After FG&E and defendants filed their initial motions for summary judgment in 2009 (2009 motions), and after a hearing thereon, FG&E filed a First Amended Complaint. On November 18, 2010, OneBeacon submitted a “Motion for Summary Judgment Under Its Primary Policies,” and Travelers submitted a “Supplemental Motion for Summary Judgment Regarding Additional Policies” (2010 motions).[2] Each of those motions incorporates the grounds stated in their 2009 motions and listed above. This memorandum and order will address those grounds.
DISCUSSION
Summary judgment may be granted where, viewing the evidence in the light most favorable to the non-moving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.R.Civ.P. 56(c). “The moving party must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
1. Trigger of Coverage and the Owned Property Exclusion
FG&E moves for partial summary judgment on the ground that there can be no dispute that coverage under the policies was “triggered” when property damage resulted during the respective policy periods. Citing Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 853 (1993), FG&E argues that there is no requirement that the property damage had to be discovered, or “manifested,” during the policy period, nor is the insured required to quantify the amount of damage that happened during the policy period. FG&E’s Memorandum of Law, at 15.
Defendants do not dispute the latter proposition, but they do argue that continuous groundwater contamination on the site does not constitute covered “property damage” because the owned property exclusion excludes coverage for damage to the site itself. Thus, defendants argue, there can be no “trigger” until off-site property damage is shown to have occurred during the policy periods. Defendants’ Joint Opposition, at 1.
Under the policies, defendants “will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... [property damage] to which this insurance applies, caused by an occurrence ...” Ex. 2, para. 5.[3] “Occurrence” is defined as:
an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injuxy or property damage neither expected nor intended from the standpoint of the insured.
Ex. 2, para. 6. “Property damage” is defined as “injury to or destruction of tangible property.” Ex. 2, para. 8. The policies also contain an owned property exclusion, which excludes coverage for property damage to:
(1) properly owned or occupied by or rented to the insured, (2) property used by the insured, or (3) property in the care, custody, or control of the insured or as to which the insured is for any purpose exercising physical control.
Ex. 2, para. 10.
Massachusetts courts have not squarely addressed the standard under which a threat of harm to third-party properly negates an owned property exclusion. In Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 282 (1997), the court stated that, while ”[c]osts incurred for the sole purpose of remediating the [insured’s] property are barred by the owned property exclusion,” the exclusion does not pertain to “cleanup costs incurred to remediate or prevent further migration of the contaminants to the off-site waterways.” The court considered, but did not reach, the question whether an owned property exclusion bars coverage if there is an “imminent threat of, but no actual contamination of, the property of another.” Id. at 280, n.8. In Rubenstein v. Royal Ins. Co. of *558 America, 44 Mass.App.Ct. 842, 854 (1998), the court noted that, pursuant to Hakim, the owned property-exclusion does not relieve an insurer from liability for costs if the cleanup is designed to “prevent further migration of contaminants to the off-site property.” The court stated that “[t]his is the case even if the contaminating substances are solely on the insured’s land.” Id. The Court concludes, therefore, that .the owned properly exclusion does not bar coverage for the cleanup of contaminants on FG&E’s property as long as the cleanup is designed to prevent damage to off-site property.
What Hakim and Rubenstein have left undecided, however, is the standard by which any threat is to be measured. In Rubenstein, the jury found, on the facts of that case and in answer to special questions, that on-site contamination posed “an imminent or immediate threat of additional pollution of the groundwater and migration of the oil beyond the boundaries of the site.” Id. at 854.[4]
In this case, there remain issues of fact regarding off-site contamination and the need for remediation. For example, FG&E’s expert, Neil S. Shifrin, Ph.D., opined that “contamination did and continues to migrate offsite beyond plant boundaries." DiTuIlio Aff. I, ex. 5, p. 8. Defendants’ expert, BrianL. Murphy, Ph.D., disputes this conclusion, opining that (1) there is no evidence that the DNAPL is still mobile, (2) on the northern portion of the site a till layer and steel sheet pile prevent DNAPL from migrating into the river, and (3) on the southern portion the contamination is far from the river. DiTuIlio aff. I, ex. 2, p. 8-9. In addition to the differing opinions of the experts, there are issues of fact regarding the rate at which groundwater containing contaminants migrates, the relevant factors in making such a determination, and how and over what period that harm, whether imminent or significant, is to be measured.
Accordingly, the Court concludes that neither side has established entitlement to summary judgment based on the owned property exclusion and whether the policies were triggered.
2. Notice
FG&E contends that there is no genuine dispute that its notice to defendants was timely, and seeks summary judgment as to defendants’ affirmative defense of untimeliness. Defendants bear the burden of proving that FG&E breached the notice provisions of the policies, and that the breach actually prejudiced defendants. See Employers Liab. Assurance Corp. v. Hoechst Celanese Corp., 43 Mass.App.Ct. 465, 472 (1997).
Under the relevant policies, “in the event of an occurrence,” FG&E is required to provide “as soon as practicable” written notice to its insurers which contains “reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of. . . available witnesses ...” Ex. 2, para. 15. Once a claim is made, FG&E must “immediately forward . . . every demand, notice, summons or other process received” and/or “each paper . . . received by the Insured ...” Ex. 2, para. 17.
Defendants argue that FG&E knew, long before it gave notice to Travelers and to OneBeacon, that its MGP operations were contaminating the site. Defendants argue that they were “indisputably prejudiced by virtue of the loss of evidence and witnesses over the years, FGE’s failure to candidly apprise environmental consultants and regulators of the full extent of MGP operations at the Site, and FGE’s failure to undertake any measures to mitigate future potential damage.” Jt. Opp., at 3. FG&E counters that notice was timely and, in any event, that defendants cannot show actual prejudice if it was not. FG&E’s Memorandum of Law, at 16.
After reviewing the materials submitted by both sides, and in light of the considerations set out in Hoechst, Eastern Prods. Corp. v. Continental Cas. Co., 58 Mass.App.Ct. 16 (2003), and Darcy v. Hartford Ins. Co., 407 Mass. 481, 486 (1990), the Court concludes that genuine issues of material fact remain regarding both when FG&E was required to give notice, and any prejudice to defendants if notice was late.
3. Expected and Intended Damages
The defendants argue that they are entitled to summary judgment where FG&E expected or intended that its operation of the manufactured gas plant would result in some harm.[5] They rely on a number of incidents that occurred over the century during which FG&E was in operation, including leaks from storage tanks and metal pipes they contend FG&E either knew or should have known would leak; improper storage of large amounts of tar; and disposal of waste containing cyanide compounds. The defendants claim that the industry in general, and FG&E in particular, was aware that MGPs could and did cause hazardous materials to enter the environment. As support therefor, defendants point to FG&E’s participation in industry associations, the literature on the dangers of contamination, and the published works of one of FG&E’s own engineers outlining the damage caused by MGP wastes.
Whether the burden as to the expected or intended exclusion falls on FG&E or defendants,[6] the Court concludes that genuine issues of material fact remain as to whether FG&E actually intended the property damage or knew to a substantial certainty that property damage would result from its actions. See Preferred Mut. Ins. Co. v. Gamache, 42 Mass.App.Ct. 194, 198 (1997) (“when interpreting intentional injury exclusion clauses in policies providing liability coverage for ‘accidents,’ the Supreme Judicial Court has focused on the insured’s intent to injure, not merely the insured’s intent to act”); Utica Mut. Ins. Co. v. Hamel, 46 Mass.App.Ct. 622, 624 (1999) (coverage excluded where the damage caused by the plaintiffs was “sub *559 stantially certain, as a matter of law,” to cause property damage).
For example, Dr. Shifrin, FG&E’s expert, concludes that FG&E did not deliberately discard tar over the years, and opines that FG&E recycled most or all of its tar, sold what it did not recycle, and promptly fixed any known leakage. He further concludes that any leakage from storage tanks was inadvertent and unknown. DiTullio Aff. ex. 5 at 7-9.
Similarly, FG&E’s participation in professional societies, journal articles outlining the damage caused by MGP wastes, and public law suits and hearings regarding other MGPs, see DiTullio Aff. ex. 2, at 15 (report of defendants’ expert, Brian Murphy, Ph.D.), bear upon FG&E’s knowledge, but do not foreclose the issue. Nor is it sufficient that FG&E might have acted recklessly or negligently. See Gamache, 42 Mass.App.Ct. at 202 (“Negligent conduct is not intentional conduct. . . when construing insurance coverage, wanton or reckless conduct is not the legal equivalent of intentional conduct”).
Accordingly, the Court cannot conclude, as a matter of law, that FG&E expected or intended offsite contamination.
4. Pollution Exclusion
Travelers argues that the pollution exclusion in its policies precludes coverage for property damage “arising from any release of waste or pollutants when the release is expected or intended by the insured,” and “arising from any release of petroleum derivative into a body of water when the release is ‘not sudden.’ ” Memorandum of Law in Support of the [2009] Motion Re Expected or Intended Damages and the Pollution Exclusion, at 33; see full text of policies in Ex. 2.
Travelers notes that, while in the “occurrence” definition, FG&E must have expected or intended “property damage,” Travelers may establish the pollution exclusion by showing that FG&E expected or intended any “emission, seepage, release or escape” of waste pollution. See, e.g., Travelers Ins. Co. v. Waltham Indus. Labs Corp., 722 F.Sup. 814, 824 (D.Mass. 1988), quoting Fireman’s Fund. Ins. Co. v. Ex-Cell-O-Corp., 662 F.Sup. 71, 75-76 (E.D. Mich. 1987) (“application of the pollution exclusion depends entirely on process by which pollutants entered the environment . . . The decisive inquiry is not whether the policy holders anticipated damage, or whether they regularly disposed of hazardous waste, but whether the pollution entered the environment unexpectedly or unintentionally”).
The defendants nevertheless rely on essentially the facts on which they based their argument that damages were expected or intended to support their contention that discharge was expected or intended. For the same reasons as before, summary judgment is not appropriate.
5. Voluntary Payments Condition
The defendants contend that the voluntary payments conditions in the relevant policies[7]" preclude coverage for payments made by FG&E pursuant to its agreement with the Department of Environmental Protection (DEP) to remediate pollution at the site, without first obtaining the consent of its insurers. While FG&E opposes the motion on several grounds, the Court need address only FG&E’s contention that defendants have not demonstrated prejudice as a matter of law.
In Darcy v. Hartford Ins. Co., 407 Mass. at 490, the court held that where an insurer claims a breach of a provision that is designed primarily to protect that insurer’s interest, and when that interest has not been jeopardized by the insured’s breach, “in the sense that the insured’s infraction does not seriously impair the insurer’s investigation of defense of the action, there is no persuasive reason to permit the insurer to deny coverage under the policy. We now . . . require[ ] a showing of prejudice by the insurer.” See also Hoechst, 43 Mass.App.Ct. at 481 (insured’s breach of voluntary payment provision, like breach of a notice provision, should not avail insurer unless insurer sustains burden of proving actual prejudice); Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 305 (1994) (before insurance company can be relieved of responsibility based on insured’s violations of insurance provisions, insurer would have to show that it had incurred actual prejudice).
Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 (1991), does not, as the defendants argue, compel a different result. There, prior to any notice by Augat to its insurer, Augat agreed with the Department of Environmental Quality Engineering (DEQE) to a resolution whereby, on February 2, 1984, the Commonwealth “simultaneously filed its complaint, a consent order signed by Augat and the Commonwealth, and a proposed form of judgment in Superior Court. Four days later, final judgment entered on the complaint imposing civil penalties and requiring that Augat decontaminate the site at its own expense.” Id. at 118-19. On February 9, 1984, Augat notified Liberty Mutual that “a situation has arisen . .. which may give rise to a claim” under the policy. Id. at 119. Not until July 30, 1986, did Augat notify Liberty Mutual of the court order. Id.
The court concluded that, although the voluntary policy provision was designed to give the insurer an opportunity to protect its interests, on the facts of the case, after Augat had agreed to a settlement, entered into a consent judgment, assumed the obligation to pay the entire cost of the cleanup, and indeed paid a portion of the cost, “it was too late for the insurer to act to protect its interests. There was nothing left for the insurer to do but issue a check.” Id. at 123.
The facts here are markedly different, principally in light of the substantial advance notice which FG&E *560 gave defendants, beginning in 1984 and 1985, of the DEP’s notice of contamination at the site. While defendants maintain that the last communication between the parties left the ball in FG&E’s court, the ball was at least in play, whereas Augat had hidden the ball until after the fact. The issue of prejudice is a live issue here, and precludes summaiy judgment.
6. Post Policy Period Damages[8]
Defendants’ 2010 motions for summary judgment note their 2009 motion’s request for summary judgment “as to any property damage arising out of seven specific releases [between 1979 and 1997] that occurred after the expiration of the last policy period of policies then in the case.” OneBeacon’s Memorandum in support of its 2010 motion, at 8. They note also that “FGE responded to this motion by pointing out that (1) six of the seven releases (all except the 1979 Holder D tar disposal release) arose out of FGE’s electric operations; and (2) FGE did not seek insurance coverage for them because its claims were limited to property damage arising out of gas manufacturing operations.” Id. See also FG&E’s Opposition to Defendants’ [2009] Motion re: post policy period damage, at 3: “Defendants identify seven instances of contamination that happened after January 1, 1976. Six of these identified instances resulted from Fitchburg Gas’s electric operations which are not at issue in this litigation, and thus are irrelevant and moot.” Because “FGE’s First Amended Complaint did not assert claims for property damage arising out of electric operations,” OneBeacon’s Memorandum at 8, defendants contend that summaiy judgment is appropriate as to “any property damage arising out of the six electric operation releases.” Id. at 8-9.
FG&E responds by arguing that its claims “are no longer limited to property damage arising out of gas manufacturing operations, but also include covered property damage caused by leaks and spills of oil arising out of Fitchburg Gas’s electrical operations. Under the First Amended Complaint, Fitchburg Gas seeks indemnification for all of its liability payments and defense costs for property damage related to the Sawyer Passway Site.” FG&E’s Opposition to OneBeacoris 2010 motion, at 2-3. Moreover, FG&E argues, defendants “already have obtained full discovery on all of the oil spills that are at issue in this action.” Id. at 3.
Having compared the initial complaint line by line with the First Amended Complaint, the Court sees no significant difference between the two with regard to the damage for which recovery is sought; in that respect, they are essentially identical (both refer genetically to “environmental property damage associated with the MGP Site”). Nor does First Amended Complaint make any reference to electrical operations. Moreover, OneBeacon summarizes the substantial discovery that defendants would have had to take had damage from electrical operations been in issue. OneBeacoris Reply, at 2, n.l.
The Court concludes from the above that the damage at issue in this case is property damage allegedly resulting from environmental contamination associated with the MGP operations, not FG&E’s electrical operations. Accordingly, defendant’s motion as to the latter damage, whether pre-or post-policy period, will be allowed. To the extent that defendants seek summary judgment as to post-policy period MGP property damage, the motion will be denied.
7. Statute of Limitations and Laches
The defendants claim that, since there was no communication between FG&E and OneBeacon after FG&E’s February 1990 letter, and none between FG&E and Travelers after January 1999, the lapse of time between those dates and the filing of this action in 2006 was “the equivalent of a denial of coverage and a breach” of their duties under the policies for purposes of accrual of the statute of limitations. Therefore, they argue, FG&E waited beyond the six-year statute of limitations to file its breach of contract claim.
On the summary judgment record, the Court concludes that genuine issues of fact remain as to when FG&E’s cause of action against either defendant arose, rendering summary judgment as to the statute of limitations or laches inappropriate.
ORDER
For the reasons set out above, plaintiff FG&E’s motion for summary judgment is DENIED; defendants’ 2009 motion for summary judgment regarding post-policy period damage is ALLOWED as to property damage from FG&E’s electrical operations; and in all other respects defendants’ 2009 motions for summary judgment are DENIED. It is further ORDERED that the foregoing rulings as to defendants’ 2009 motions apply equally to OneBeacon’s Motion for Summary Judgment Under its Primary Policies, and defendant Travelers’ Supplemental Motion for Summary Judgment Regarding Additional Policies, each filed November 18, 2010, to the extent that the latter motions incorporate the grounds stated in the defendants’ 2009 motions.
To the extent that defendants’ recent motions raise any additional grounds for summary judgment, the clerk is requested to schedule a hearing on those grounds at a final pretrial conference to be scheduled before the trial judge, or on such other date as the judge may choose.

 The relevant policy language is the same for purposes of the 2009 and 2010 motions: “[The First Amended Complaint] for the first time asserted claims for breach of contract under five OneBeacon primary liability policies for the years of 1980 to 1985 [which] contain either the same or relevantly identical policy terms, conditions and exclusions that formed the bases for the Defendants’ [initial motions for summary judgment]" (OneBeacon’s memorandum in support of its 2010 motion, at 2); “Because the Five Additional Policies [alleged in the First Amended Complaint] have identical or similar applicable *561 wording as the Travelers policies ... which are the subject of the Initial [2009] SJ Motions, the Initial SJ Motions equally apply to the Five Additional Policies.” Travelers Supplemental Motion, at 2.

 All references to or quotations of language from pertinent policies are taken from Exhibit 2 (“Statement of Agreed Policy Language”) to the parties’ Joint Pre-Trial Memorandum, filed November 18, 2010. Where the variations among defendants’ policies are not significant to the Court’s analysis, the Court has not quoted each variant.

 In Moore v. New England Guar. Ins. Co., Inc., 73 Mass.App.Ct. 1118 (2009) (unpublished decision) (No. 08-P-304, slip op. at 3 (Jan. 30, 2009)), the court concluded that the owned property exclusion applied where the evidence in the summary judgment record “provided no indication of a significant threat” to adjoining property.

 As noted above, the policies define an occurrence as an “accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.” Ex. 2, para. 6.

 See Highlands Ins. Co. v. Aerovox, 424 Mass. 226, 230 (1997), quoting Murray v. Continental Ins. Co., 313 Mass. 557, 563 (1943) (‘The general rule . . . [is] that a plaintiff seeking to recover for breach of a duty or obligation created by a general clause of a contract, which also contains an exception descriptively limiting such duty or obligation must allege and prove that his cause of action is within the contract and outside the exception; but that where the exception is in another separate and distinct clause of the . . . contract defining . . . the duty or obligation, then the burden is upon the party relying on such exception” (brackets in original)); Hanover Ins. Co. v. Talhouni, 413 Mass. 781, 785 (1992), citing McGinnis v. Aetna Life & Casualty Co., 398 Mass. 37, 38 (1986) (“The insurer must show the applicability of the clause excluding coverage for injury or damage intended or expected by the insured”). Once the insurer has demonstrated that a policy exclusion applies negating coverage, the burden shifts back to the insured to show an exception to the exclusion. Aerovox, 424 Mass. at 231.

 “The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.” Ex. 2, para. 14.

 The law applicable to defendants’ motion based on allocation has been resolved by the Supreme Judicial Court in Boston Gas Co. v. Century Indem. Co., 454 Mass. 337 (2009). Issues of fact as to allocation of FG&E’s damages are to be resolved at trial in accordance with the procedure set out in Boston Gas.