SUPERIOR COURT 
 
 WENDA AQUINO vs. UNITED PROPERTY & CASUALTY INSURANCE COMPANY

 
 Docket:
 CIVIL ACTION NO. 18-00366-G
 
 
 Dates:
 September 25, 2018
 
 
 Present:
 Paul D. Wilson, Justice of the Superior Court
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
 
 

             This suit arises out of a 2017 fire at the home of
Plaintiff Wenda Aquino, for which Aquino sought payments under her homeowner's
insurance policy. That policy was issued to her by Defendant United Property
& Casualty Insurance Company ("UPC"). UPC denied payment to
Aquino on the ground that the damage was intentionally caused by Aquino's fiancé,
who was a named co-insured on the policy, and that the homeowner's policy
excludes recovery by any insured in such a circumstance.             Aquino filed this suit seeking declaratory and other
relief to reform the homeowner's policy to provide for coverage of her claimed
damages, and she seeks damages for unfair and deceptive trade acts and
practices by UPC under G. L. c. 93A and G. L. c. 176D. In the present motion,
Aquino seeks summary judgment on Count I (declaratory judgment), Count II
(breach of contract), and Count VII (reformation of the policy). UPC has
cross-moved for summary judgment on all counts in the Plaintiff's complaint.
For the reasons stated below, the Plaintiff's motion is ALLOWED IN PART and
DENIED IN PART, and the Defendant's motion is ALLOWED IN PART and DENIED IN
PART.                                                             -1- BACKGROUND             The following facts, drawn from the summary judgment
record, are uncontested. Some facts are reserved for discussion below.             In 2014, Aquino and her fiancé, Kelly Pastrana, purchased
a two-family residential dwelling located at 80 Warren Avenue in Chelsea,
Massachusetts (the "Property"). Both Aquino and Pastrana are listed on
the deed and mortgage for the Property. UPC issued a homeowner's insurance
policy to Aquino and Pastrana covering the Property ("the Policy")
that was effective at the time of the events at issue in this case.             On May 22, 2017, a fire caused extensive damage to the
Property. For purposes of the present motions, the parties do not contest that
the fire was caused by an intentional act of Pastrana, and that Aquino was
innocent of any involvement. Pastrana died in the fire.             After the fire, Aquino asserted several claims under the
Policy for the damages she sustained, including claims for (a) destruction of
the building situated on the Property, (b) destruction of the driveway,
walkway, patio, retaining wall and stairs/railings on the Property, (c) loss of
personal property contained in the building situated on the Property, (d) loss
of rental income and additional living expenses, (e) costs associated with
enforcement of "ordinance or law" against Aquino as owner of a
Property containing a fire-damaged and unsafe structure, (f) destruction to
landscaping, trees and shrubs, and (g) debris removal. [1]             On August 18, 2017, UPC denied its liability for Aquino's
claims, citing the Intentional Loss Exclusion provision in the Policy. [2] That
provision states, in relevant part: --------------------------- [1]
The parties have submitted an itemized summary of Aquino's damages, categorized
by Policy coverage provision. The parties agree, subject to their respective
coverage positions, that these are Aquino's damages. [2]
In the letter denying coverage, UPC also stated that the fire was not an
"occurrence" under the terms of the Policy. UPC does not advance that
position in its briefing on the present motions.                                                             -2- SECTION I — EXCLUSIONS             A. We do not insure for loss caused directly or
indirectly by any of the following. . . .             8. Intentional Loss Intentional
Loss means any loss arising out of any act an 'insured' commits or conspires to
commit with the intent to cause a loss. In
the event of such loss, no 'insured' is entitled to coverage, even
"insureds" who did not commit or conspire to commit the act causing
the loss. Aquino and Pastrana are both
named insureds on the Policy.             Aquino brought the present suit against UPC to recover
the damages she sustained in the fire. There are eight counts in the complaint:
Count I is for declaratory judgment; Count II is for breach of contract; Count
III is for breach of the implied covenant of good faith and fair dealing; Count
IV is for promissory estoppel; Count V is for equitable estoppel; Count VI is
for waiver; Count VII is for reformation of the policy; and Count VIII is for
unfair and deceptive trade acts and practices. In the first seven counts,
Aquino seeks payment of all of her claimed damages under the Policy, as well as
attorney's fees, costs, and interest. In Count VIII, Aquino seeks relief under
G. L. c. 93A and G. L. c. 176D for alleged unfair and deceptive trade acts and
practices by UPC, for which she seeks double or treble the amount of her actual
damages, as well as attorneys' fees, costs, and interest. DISCUSSION             I.          Legal
Standard             Summary judgment is properly entered "if the
pleadings, depositions, answers to interrogatories, and responses to requests
for admission under Rule 36, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law." Mass. R. Civ. P. 56©; see
Miramar Park                                                             -3- Ass'n Inc. v. Dennis, 480
Mass. 366, 376 (2018). "The moving party bears the burden of affirmatively
demonstrating that there is no triable issue of fact." Ng Bros. Constr. v.
Cranney, 436 Mass. 638, 644 (2002). The interpretation of an insurance policy
raises a question of law that is appropriately resolved on summary judgment.
See Massachusetts Bay Transp. Auth. v. Allianz Ins. Co., 413 Mass. 473, 476
(1992).             II.        Analysis                         A. Whether Aquino can recover under the
policy             Aquino moves for summary judgment on Count I (declaratory
judgment), Count II (breach of contract), and Count VII (reformation), arguing
that the Policy must be reformed to comport with certain statutory
requirements, and that UPC is in breach of the Policy as reformed. UPC
cross-moves for summary judgment on the same Counts.             The parties do not dispute that the provision of the
Policy governing intentional loss is unambiguous. That provision, if enforced
as written, would impose a joint obligation on insureds not to cause
intentional loss, and would thus preclude any recovery by Aquino as a
consequence of the intentional act of Pastrana.             Aquino's argument is rather that the Policy is not
enforceable as written and must be reformed pursuant to G. L. c. 175, § 99 to
allow for payments to her as an innocent co-insured party. That statute,
entitled "Standard Form of Fire Policy," mandates the form of fire
insurance policies in Massachusetts. Ideal Fin. Servs., Inc. v. Zichelle, 52
Mass. App. Ct. 50, 66 (2001). The statute provides that "[n]o company
shall issue policies or contracts which. . . insure against loss or damage by
fire. . . to property or interests in the commonwealth, other than those of the
standard forms herein set forth," subject to certain exceptions not raised
here. G. L. c. 175, § 99. Aquino argues that the Intentional Loss provision
provides for a broader exclusion of coverage                                                             -4- of insureds than the
provisions of the statutory standard policy, and must be reformed in conformity
with the mandate of G. L. c. 175, § 99.             The statutory standard policy contains a provision
stating that the insurer "shall not be liable for loss occurring. . .
while the hazard is increased by any means within the control or knowledge of
the insured." G. L. c. 175, § 99. The standard policy also contains a
provision stating that the insurer "shall not be liable for loss by fire .
. . caused. . . by. . . neglect of the insured to use all reasonable means to
save and preserve the property at and after a loss . . . ." Id. I agree
with Aquino that these provisions govern a scenario in which the insured
intentionally causes a loss by burning the insured property. Such an act
increases the hazard to the property and evidences neglect to "preserve
the property at. . . a loss." I also agree that, if the Intentional Loss
provision in the Policy provides a broader exclusion of coverage than these
provisions mandated by G. L. c. 175, § 99, the Policy provision cannot prevail.             Aquino argues that because these statutory provisions
refer to acts by "the" insured that would absolve the insurer of
liability, rather than referring to acts of "an" insured as the
Policy does, the statute mandates a several obligation not to cause a loss,
rather than a joint obligation among the insureds not to do so. She argues that
UPC, in limiting its liability in the Policy by excluding coverage on the basis
of intentional acts of "an" insured, and in making clear that an
intentional loss caused by one insured will preclude coverage by any other
insured, imposes a joint obligation that impermissibly conflicts with the
prescribed statutory form. This is correct. UPC's Policy substitutes the use of
"an" in place of the consistent use of "the" in the
statutory policy, and adds a sentence making clear that the language of the
Policy means that "no 'insured' is entitled to coverage, even 'insureds'
who did not commit or conspire to commit the act                                                             -5- causing the loss." Such
variance from the statutory language impermissibly narrows the
statutorily-required coverage afforded to insureds.             The argument raised by Aquino with respect to G. L. c.
175, § 99, has now been addressed on three prior occasions by judges of the
Superior Court of Massachusetts, and on one occasion by a judge of the United
States District Court for the District of Massachusetts. The rulings have been
consistently in favor of the innocent insured. In two of the prior Superior
Court matters, and in the case before the federal court, the courts ruled that
the intentional loss provision in the insurer's policy referring to
"an" or "any" insured -- or similar language denying
coverage for all insureds for an intentional loss caused by any insured --
conflicted with the Legislature's use of "the" insured in G. L. c.
175, § 99. Liberty Mut. Ins. Co. v. Gonzalez, No. ESCV20151794B, 2017 WL
3080565, at *6 (Mass. Super. Ct. June 12, 2017); Hall v. Preferred  Mut. Ins. Co., No. HDCV201400781, 2015 WL
4511760, at *6-7 (Mass. Super. Ct. May 1, 2015); Shepperson v. Metropolitan
Prop. & Cas. Ins. Co., 312 F. Supp. 3d 183, 198 (D. Mass. 2018). A third
Superior Court ruling on the issue strongly suggested the same result.
Barnstable  County Mut. Ins. Co. v.
Dezotell, No. 200500361, 2006 WL 2423570, at *2, 5-6 (Mass. Super. Ct. July 20,
2006) (where there was evidence insured defendant's husband conspired with
third party to have home burned, plaintiff insurer nonetheless had no
"reasonable likelihood of. . . recovering judgment" against defendant
where there was no evidence defendant intentionally caused loss, and where "Nile
Intentional Act exclusion in the policy issued by the plaintiff may very well
be construed as diminishing or diluting the coverage required under [G. L. c.
175,] § 99.").             Additionally, the Supreme Judicial Court has stated that
one factor to consider in construing the statute is the interest in
"giving [G. L. c. 175,] § 99 the same treatment that is                                                             -6- given to identical language
policies issued in other States." Pappas Enters., Inc. v. Commerce
&  Indus. Ins. Co., 422 Mass. 80, 83
(1996). Accordingly, Massachusetts state and federal courts have commonly
surveyed decisions of courts outside Massachusetts on the matter.             Here, too, the decisions strongly favor the innocent
co-insured. See Gonzalez, 2017 WL 3080565, at *6, and cases cited (surveying
cases and concluding that "the overwhelming weight of appellate authority
in other states addressing the very issue presented herein supports [the
innocent co-insured's] position. This court adopts the reasoning of those other
courts."); Shepperson, 312 F. Supp. 3d at 196-197, and cases cited,
quoting Pappas Enters., Inc., 422 Mass. at 83 (surveying cases analyzing the
distinction between "a(ny) insured" and "the insured" as it
regards the statutory standard policy and concluding, "I see no reason why
the Supreme Judicial Court would not join in the reasoning of its sister
jurisdictions, especially when it has expressed an interest 'in giving § 99 the
same treatment that is given to identical language policies issued in other
States.'").             Like the Gonzalez and Shepperson courts, I find
persuasive the rulings of those courts of other jurisdictions that allowed
recovery to the innocent co-insured. [3] See, e.g., Streit v. Metropolitan Cas.
Ins. Co., 863 F.3d 770, 773-774 (7th Cir. 2017) ("The term 'the insured' is
not defined in the Standard Fire Policy. But as noted by many states
interpreting identical language, --------------------------- [3]
UPC argues that "[t]o the extent this court relies on out-of-state case
law, there are numerous jurisdictions which bar coverage for 'innocent
co-insureds' under exclusions nearly identical to the one contained in the
Policy." Several cases UPC cites in that regard are inapposite. See
Postell v. American Family Mut. Ins. Co., 823 N.W.2d 35, 48-49 (Iowa 2012)
(innocent co-insured could not recover based on intentional loss exclusion in
issued policy because Iowa legislature had amended standard policy statute to
change relevant language from "the insured" to "an
insured"); Tuturea v. Tennessee Farmers Mut. Ins. Co., No. W2009-01866-COA-R3-CV,
2010 WL 2593627, at *19 (Tenn. Ct. App. June 29, 2010) ("While courts in
other jurisdictions have reformed or held unenforceable policies excluding
recovery by an innocent co-insured where the policies did not comply with
legislative limitations on liability exclusions . . . [the plaintiff] has not
argued that similar limitations govern the enforcement of insurance agreements
in Tennessee."); Noland v. Farmers Ins. Co., 319 Ark. 449,453 (1995)
(holding that insured could not recover, but not discussing any standard policy
statute, and noting that insured had offer[ed] "no Arkansas law" in
support of contention that policy exclusion was contrary to public policy). The
weight of out-of-state authority favors Aquino.                                                             -7- the inclusion of the word
'the' as opposed to 'an' serves as a limitation."); Watson v. United
Servs. Auto. Ass'n, 566 N.W.2d 683, 691 (Minn. 1997) ("[W]e conclude that
the legislature's use of 'the insured' in the Minnesota standard fire insurance
policy evinces a general intent to compensate an innocent co-insured spouse
despite the intentional acts of the other insured spouse."). The
Intentional Loss provision of the Policy must be reformed to provide a several
obligation, such that Aquino may recover under the Policy as an innocent
co-insured party.             UPC argues that the Policy is consistent with G. L. c.
175, § 99, citing the Supreme Judicial Court's 1938 decision in Kosior v.
Continental Ins. Co. in support of its position. 299 Mass. 601 (1938). In that
case, a husband and wife were named insureds on a policy, and the husband
intentionally set fire to the home in an attempt to defraud the insurance
company. I. at 602. The policy in question provided that "if the insured
shall make any attempt to defraud the Company" the policy would be void.
Id. The court ruled that the policy was joint and that the wife -- the
plaintiff in that case -- could not recover as a consequence of her husband's
actions. Id. at 604. However, while the Court acknowledged the existence of the
standard form insurance policy of G. L. c. 175, § 99, id. at 603, the Court did
not review the statutory text or address whether the statute required broader
coverage of an innocent co-insured. As a result, Kosior did not address the
question at the heart of these motions, and does not require a ruling in UPC's
favor.                         B. How much Aquino can recover under the
Policy             Given that Aquino can recover for damages under the
Policy, the next question presented is whether Aquino is entitled to full recovery
on the Policy, or whether her recovery should be less than that amount in light
of Pastrana's intentional act of arson. UPC argues that if Aquino recovers
under the Policy, she should only be entitled to recover half of the damages
caused by                                                             -8- the loss, within the limits
of the policy. The argument raised by UPC in favor of a limited recovery was
not addressed by the Massachusetts courts in the Hall, Gonzalez, Dezotell, or
Shepperson cases discussed above.             I conclude that Aquino should recover for half of the
losses caused by fire, up to half of the applicable coverage limits. Having
determined that the intentional loss provision of the contract must be reformed
to treat Aquino and Pastrana severally for purposes of assessing Aquino's ability
to recover, I will also treat them severally in assessing any forfeiture of
coverage by arson under that provision. Here, Pastrana's act of purposefully
burning the property will forfeit his share of recovery under the Policy.             I look to the contract to determine the extent of
Pastrana's share. Courts construe the words of an insurance policy "in
their usual and ordinary sense," absent any ambiguity. Citation  Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998)
(internal quotation marks omitted), quoting Hakim v. Massachusetts Insurers'
Insolvency Fund, 424 Mass. 275, 280 (1997). Here, as Pastrana is listed as one
of two named insureds on the Policy who had an interest in the contract, I
construe his share in the Policy damages as one-half. Neither party points to
any other language in the Policy, and I find none, that would suggest that
Aquino and Pastrana's respective interests in the Policy were anything other
than equal: [4] Limiting Aquino's recovery to one-half of the losses is also in
keeping with the provisions of G. L. c. 175, § 99, discussed above, which
evidence an intent to prevent a person who intentionally causes a loss from
recovering for that --------------------------- [4]
In support of its argument that Aquino is only due half of the damages, UPC
cites the "Insurable Interest And Limit Of Liability" provision in
the Policy. That provision states that UPC "will not be liable in any one
loss. . . [t]o an 'insured' for more than the amount of such 'insured's'
interest at the time of loss." UPC argues that Pastrana and Aquino owned
the property as tenants in common, and as such, Aquino only had a one-half
insurable interest in the Property. Aquino responds that the way in which the
Property was owned should not determine recovery under the Policy. However,
Aquino does not point to anything in the Policy suggesting that Pastrana and
Aquino's interests in recovery under the Policy were anything other than equal.                                                             -9- loss. Aquino's recovery will
be half of the damages sustained, up to half of the coverage limits provided in
the Policy.             Aquino acknowledges "the law's legitimate concern
that a wrongdoer not reap any benefit from his malfeasance" as the
"predominant public policy concern," but argues that because Pastrana
perished in the fire, no such concern is present here, and she should be
awarded full recovery. But a person who intentionally burns a property and dies
in the fire may well have intended to deliver the insurance proceeds to his
family; if so, then a full recovery would reward the arson, albeit
posthumously. More fundamentally, I decline to impose a rule that, by
conditioning insurance awards on the survival or non-survival of the arsonist,
would have the effect of providing a larger payout in an arson scheme if the
arsonist takes his own life in the process.             My ruling in this regard is in keeping with the decisions
of courts in other jurisdictions. See, e.g., Brunk v. Amica Mut. Ins. Co., No.
06-15160, 2007 WL 3244874, *2 (E.D. Mich., Nov. 2, 2007) ("Michigan has
followed the majority of jurisdictions in limiting an innocent coinsured's
recovery to one-half in most circumstances."); id. at *6 ("Michael
Brunk forfeited his interest by igniting a fire within the home as prohibited
by the insurance policy's exclusion for intentional loss. This forfeited
interest was not resurrected by virtue of his death."); Texas  Farmers Ins. Co. v. Murphy, 996 S.W. 2d 873,
881 (Tex. 1999) (concluding, as matter of public policy, that policy against
allowing an arsonist to benefit from fraud "does not overcome an innocent
spouse's contractual right to recover her or his one-half interest in the
policy benefits"); Maravich v. Aetna Life & Casualty Co., 504 A.2d
896, 907-908 (Pa. Super. Ct. Jan. 24, 1986)                                                             -10- ("By allowing [the
insurer] to retain one-half of the loss, we give effect to the common law
principle that [the arsonist] should not be permitted to profit from his own
wrong."). [5]             Aquino argues that even if her recovery is limited to
one-half of the recovery of the value of the destroyed property, her recovery
should not be so limited for her additional living expenses, costs she incurs
in order to comply with applicable ordinances or laws, or costs she incurs to
remove the fire-damaged debris. She argues that she is entitled to full coverage
as to these items because "[t]he basic focus of additional living expense
coverage is on the deprivation of Aquino's use of her home as a dwelling by
reason of fire." However, neither the Policy provisions that Aquino
alludes to nor the standard policy of G. L. c. 175, § 99 provides for such a
parsing of the coverages in the Policy, and I decline to fashion that relief
without such a basis.             In sum, I allow Aquino's motion for summary judgment as
to Counts I, II, and VII to the extent provided above, concluding that the
Intentional Loss provision of the policy is unenforceable as written, that the
Policy must be reformed as described in this Order, and that UPC is in breach
of the Policy as reformed. I deny UPC's cross-motion for summary judgment as to
Counts I and II to the extent described above. ---------------------------              [5]
In the cases cited by Aquino that involved arson by a spouse and in which the
court     granted full recovery, the court
premised such recovery, at least in part, on the fact that the arsonist died in
the fire -- a position I reject. See American Economy Ins. Co. v. Liggett, 426
N.E.2d 136, 142-145 (Ind. Ct. App. 1981) ("The law's legitimate concern
that a wrongdoer not profit by his wrong is not a factor in this case and there
is no reason to deny the innocent plaintiff a full recovery, (a different rule
may need to be fashioned where the guilty spouse survives)"); id. at 140
("This public policy [of denying wrongdoer insurance recovery] is easily
vindicated by denying any recovery to the living guilty spouse and permitting
the innocent spouse recovery of one-half of the insured loss within policy
limits."); Safeco Ins. Co. of America v. Kartsone, 510 F. Supp. 856, 859
(C.D. Cal. 1981) ("[A]ny effect of [a statute providing that an insurer is
not liable for loss caused by willful act of the insured] upon [the innocent
co-insured's] right to recovery for the fire loss is negated by the fact that
the wrongdoer in this case died before the claim was paid, and cannot, under
any circumstances, stand to benefit from it"); Felder v. North River Ins.
Co., 435 N.W.2d 263, 266 (Wis. Ct. App. 1988) ("The trial court should
tailor the recovery given to the innocent insured to guard against the
possibility that the arsonist will receive financial benefit. Unlike the
wrongdoer in [a Wisconsin Supreme Court case], [the arsonist] did not survive
the fire and there is no possibility that he will profit from his criminal
act.") (citation omitted).                                                            -11-                         C. Structures covered under Coverage B in the
Policy             Aquino also moves for summary judgment in Counts I and II
of the complaint on the ground that UPC failed to appropriately pay for damage
to certain structures on the Property, and UPC cross-moves on the same issue as
to Count I. [6] Specifically, the parties dispute whether certain structures on
the Property are covered under Coverage A of the policy ("Dwelling")
or Coverage B ("Other Structures"). Resolving that issue requires me
to construe the language of the Policy. As noted, where there is no ambiguity
in an insurance contract, courts "construe the words of the policy in
their usual and ordinary sense." Citation Ins. Co., 426 Mass. at 381
(internal quotation marks omitted), quoting Hakim, 424 Mass. at 280. "When
the language of an insurance contract is ambiguous, we interpret it in the way
most favorable to the insured." Id. "[Mil ambiguity is not created
simply because a controversy exists between the parties, each favoring an interpretation
contrary to the other." Id. (internal quotation marks omitted), quoting
Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).             The Policy provides, in relevant part, as follows:             A.        Coverage A
— Dwelling             1. We cover: a.
The dwelling on the "residence premises" shown in the Declarations,
including structures attached to the dwelling. . .             B.        Coverage B
— Other Structures             1. We cover other structures on the "residence
premises" set apart from the dwelling by clear space. This includes
structures connected to the dwelling by only a fence, utility line, or similar
connection. --------------------------- [6]
UPC's cross-motion for summary judgment as to Count II is based on the
Intentional Loss exclusion provision in the policy.                                                             -12-             Thus, to be included within Coverage A, a structure must
be "attached" to the dwelling, a term that is not defined in the
Policy. To be included within Coverage B, a structure must be "set apart
from the dwelling by clear space," a phrase that also does not include any
terms defined in the Policy. I apply the usual and ordinary meaning of those
terms.             The structures in question are the "driveway,
walkway, patio, retaining wall and stairs/railings." The damage to the
house exceeded the Coverage A policy limit, so, by agreement of the parties,
the limit of insurance under Coverage A has been applied toward those damages.
Thus the critical question is whether these structures can be included within
Coverage B, where the policy limit has not been exhausted.             As Aquino conceded in her briefing and at oral argument,
the summary judgment record establishes that "the walkway, retaining wall,
steps and platforms touch or abut the dwelling." I conclude that no
reasonable construction of the Policy would allow structures that touch or abut
the dwelling to be "set apart from the dwelling by clear space." As a
result, the walkway, retaining wall, steps and platforms do not fall under
Coverage B.             Aquino also argues that the "railings surrounding
the driveway and steps" do not touch or abut the dwelling and are thus set
apart by clear space. I disagree. The summary judgment record contains an
affidavit from a public insurance adjuster, attaching photographs of the
dwelling and structures in question. As the photos demonstrate, the railings
running down the right-hand side of the stairway and walkway (when facing the
front of the property) form an integral part of the stairway and walkway. I do
not think it reasonable to parse the Policy language to treat one portion of a
unitary set of railings in one fashion while treating another portion
differently, for example by ruling that the left-hand railing (which is
fastened to the home) would fall within Coverage A, but the right-hand railing
(which is not) would fall under                                                             -13- Coverage B. I conclude
instead that the appropriate Policy construction is that the railing is a
component of the stairway and walkway and therefore falls within Coverage A.
[7]             With respect to the patio, a genuine issue of material
fact remains about how the patio stands in relation to the dwelling. While a
back portion of the home extends into the area of the patio, debris in the
photos obscures the point at which a back portion of the home meets the patio.
It is therefore unclear whether the patio is "attached" to the
dwelling or "set apart from the dwelling by clear space." As a
result, summary judgment as to the treatment of the patio is denied.             The driveway, however, is shown in the photos to be a
structure set apart by clear space from the home. Indeed, counsel for UPC
conceded at oral argument that the tenant's driveway is separated from the
dwelling. Accordingly, the driveway falls within Coverage B.             I thus allow Aquino's motion for summary judgment as to
Counts I and II to the extent that those counts seek a declaration of coverage
for the driveway under Coverage B, and a determination of breach by UPC for
failing to provide such coverage. I deny summary judgment to Aquino regarding
the other structures to the extent discussed above. I deny summary judgment to
UPC with regard to the driveway and patio as discussed above, but allow summary
judgment as to the other structures, to the extent described above.                         D. Unfair methods of competition and unfair
or deceptive acts or practices             Aquino alleges in Count VIII of her complaint that UPC
has violated G. L. c. 93A by denying her coverage under the Policy. That
statute provides that "[u]nfair methods of competition and unfair or
deceptive acts or practices in the conduct of any trade or commerce are hereby
declared unlawful." G. L. c. 93A § 2(a). The basis for this claim is that
UPC engaged in --------------------------- [7]
The same railing proceeds from the stairs along the exterior of the driveway.
The entire railing is included within Coverage A.                                                             -14- various unfair claim
settlement practices prohibited by G. L. c. 176D, § 3(9). An insurer who
violates that insurance statute automatically violates Chapter 93A as well.
Hopkins v. Liberty  Mutual Ins. Co., 434
Mass. 556, 563-565 (2001).             UPC seeks entry of summary judgment dismissing all claims
in Count VIII, arguing that UPC's denial of Aquino's claim was justified and
proper. I now grant that relief.             As discussed above, in denying coverage, UPC was simply
applying the Policy's Intentional Loss provision as written; the Policy
language precluded any recovery by Aquino as a consequence of the intentional
act of Pastrana. In light of the absence of controlling precedent in
Massachusetts on the issues raised by Aquino as to the failure of the Policy to
conform to the mandates of G. L. c. 175, § 99, UPC had a good faith basis for
its position that the Policy conformed with G. L. c. 175, § 99. As a result,
UPC has not committed any unfair or deceptive act or practice, and is entitled
to judgment as a matter of law. See Gulezian v. Lincoln Ins. Co., 399 Mass.
606, 613 (1987) ("An insurance company which in good faith denies a claim
of coverage on the basis of a plausible interpretation of its insurance policy
is unlikely to have committed a violation of G. L. c. 93A"); Guity v.
Commerce Ins. Co., 36 Mass. App. Ct. 339, 344 (1994) ("A plausible,
reasoned legal position that may ultimately turn out to be mistaken – or
simply, as here, unsuccessful – is outside the scope of the punitive aspects of
the combined application of c. 93A and c. 176D.").                         E. Summary Judgment as to Counts III, IV, V,
VI of the complaint             UPC seeks summary judgment dismissing Counts III, IV, V
and VI of the complaint. The basis for UPC's motion as to those counts is that
"Plaintiff does not have a cause of action under any such counts once
Counts I and II have been dismissed." Because this Order does not                                                             -15- entirely dismiss Counts I and
II, UPC's motion for summary judgment is denied as to those counts. CONCLUSION AND ORDER             For the reasons stated above, the Plaintiff's Motion for
Summary Judgment (Docket No. 6) is ALLOWED IN PART as follows: 1.
Count I: The Plaintiff is granted declaratory judgment that the Intentional
Loss provision of the Policy is unenforceable as written, and must be reformed
in accordance with G. L. c. 175, § 99 to provide coverage to the Plaintiff as
described above. The Plaintiff is granted declaratory judgment that the
driveway constitutes an "Other Structure" covered under Coverage B of
the Policy. 2.
Count II: UPC has breached the terms of the Policy, as reformed, by failing to
provide coverage to the Plaintiff as described above. 3.
Count VII: the Policy must be reformed in accordance with G. L. c. 175, § 99 to
provide coverage to the Plaintiff as described above. The Plaintiff's motion is
denied in all other respects.             For the reasons stated herein, the Defendant's
Cross-Motion for Summary Judgment (Docket No. 7) is ALLOWED IN PART as follows: 1.
Count I is allowed insofar as it seeks dismissal of Aquino's claims to coverage
under Coverage B of the Policy of the walkway, retaining wall and
stairs/railings, as described above.             2. Count VIII is dismissed. The Defendant's motion is
denied in all other respects.             A status conference will be held at 2:00 P.M. on October
16, 2018 in Courtroom 1008. The parties shall confer beforehand, and shall be
prepared to make proposals -- ideally a joint proposal -- about the next steps
in this case. Paul D. Wilson, Justice of
the Superior Court September 25, 2018                                                             -16-